Long Island Land Research Bureau Inc., Plaintiff, *v.* Town of Hempstead, Defendant.

Supreme Court, Special Term, Nassau County, October 29, 1952.

*Mildred McGinity* and *Eugene R. Hurley* for plaintiff.

*George R. Brennan* and *John Morehouse* for defendant.

Cuff, J.   This is an action instituted pursuant to article 15 of the Real Property Law for the purpose of determining conflicting title claims to farm land at North Bellmore, Nassau County.   Plaintiff's grantor acquired his title by deed issued by the County Treasurer of Nassau County (December 20, 1950) who, officially, had purchased a tax lien against the property. That deed will be referred to as the " tax deed ".   The defendant is the Town of Hempstead.   The facts are stipulated.

The complaint alleges: sole ownership of the property in plaintiff; that it holds title by deed as a purchaser; that the source of its title is the tax deed issued by the County Treasurer of Nassau County on December 20, 1950, he having officially acquired the property at a tax sale held in December, 1948; that defendant unjustly claims an interest in the property adverse to plaintiff's basing its claim upon a failure of early title in plaintiff's chain.

The answer denies the foregoing allegations except defendant admits that it has a claim adverse to plaintiff's title.   Also, defendant sets up a counterclaim wherein it alleges sole ownership of the land; that its sources of title are patents issued by the colonial Governors of New York and deeds from the Indians then (Colonial days) inhabiting the town of Hempstead; that the land in suit consisted of meadow and marsh lands and was a part of the " common lands " belonging to defendant; that at all times defendant exercised ownership of said commons, reserved them for public purposes and claims title thereto; that plaintiff claims an interest in said property adverse to defendant's which is based upon the tax deed issued as a result of a tax lien foreclosure proceeding wherein the unpaid tax was illegally assessed.

The reply denies the allegations of the defendant's counterclaim, except that it admits that defendant's interest is derived from ancient patents and deeds and that one of plaintiff's sources of title is the tax deed.   The reply also contains three counterclaims.   The first alleges that the sources of its title are based upon the tax deed as well as a deed dated August 10, 1948, from the heirs, etc., of one Charles Anderson; a second counterclaim alleges that plaintiff and its predecessors in title have been in adverse possession (claiming title under deeds) and have been

using the property in suit as an occupant for over forty years. The third counterclaim in the reply pleads that neither the defendant nor any predecessor in title has or have been seized or possessed of the property in suit within fifteen years before the institution of this action; that defendant's counterclaim did not accrue within forty years of the date of the institution of this suit; defendant has not, within forty years, exercised any rights of ownership over the land in suit; that defendant is barred from asserting the claim of title set forth in its counter-claim by section 31 of the Civil Practice Act.

At the trial of this action, four issues were litigated. (1) The regularity and, therefore, the validity of the tax deed; (2) the correctness of plaintiff's procedure in seeking relief under article 15 of the Real Property Law instead of under section 5–57.1 of the Nassau County Administrative Code (L. 1939, ch. 272, as amd. by L. 1939, ch. 704) which provides procedure for the foreclosure of tax liens; (3) the validity of plaintiff's title both by deeds and adverse possession and (4) the validity of defendant's title based upon its ancient patents and deeds.

Defendant's procedural objection to the avenue through which plaintiff seeks relief may not be sustained. Both article 15 of the Real Property Law and section 5–57.1 of the Nassau County Administrative Code provide procedure for the relief plaintiff demands. Plaintiff had the right to proceed as it did under article 15. The Administrative Code provision is not exclusively applicable in cases such as this one. Each provision of law (Real Property Law, art. 15; Nassau Co. Administrative Code, § 5–57.1) uses the words " may maintain " in the language authorizing the institution of this form of remedial litigation. Therefore, the litigant may elect.

Plaintiff's title via deeds depends for validity upon its grantor's title, which was the tax deed issued by the Nassau County Treasurer. Defendant maintains that the tax lien fore-closure procedure was fatally defective and must be treated as a nullity in that the " Notice to owner by holder " required to be given by law (Nassau Co. Administrative Code, § 5–51.0) did not " advise the property owner of what has occurred, i.e., that a lien for unpaid taxes against the property is now held by the purchaser (of the tax lien), and what will happen, if he does not redeem and when it will happen."

The learned town attorney cites those familiar cases which hold that where a statutory proceeding like this one is instituted, the provisions of law which created it must be strictly pursued

by the litigant who invokes the remedy (*Merritt* v. *Village of Portchester*, 71 N. Y. 309, *inter alia* is cited). The provision of law which treats with the aforesaid notice reads in part: " such notice * * * shall state briefly: * * * 4. The first day upon which the holder of the tax lien may elect to accept a deed of conveyance of such property or to call his money and foreclose his tax lien, as the case may be, which date shall not be less than three months from the day of service of the same ". (Nassau Co. Administrative Code, § 5–51.0, as amd. by L. 1943, ch. 71.)

The notice served read in full:

LONG ISLAND LAND RESEARCH BUREAU INC., 101 East 41st Street, New York City, New York

TOWN OF HEMPSTEAD, Town Hall, Front St., Hempstead, Long Island, New York

TAKE NOTICE

That the hereinafter described property was sold to the undersigned at a tax sale held by the County Treasurer of Nassau County in December 1948 for the unpaid taxes of
the School year    1947/48    which became a lien October 1st, 1947
and that this notice to redeem the same is hereby served upon you pursuant to law.

The expense of making searches thereon and of serving this notice is Twenty-five ($25.00) Dollars.

If the property is not redeemed on or before December 19th, 1950, the purchaser may elect to accept a deed of conveyance of the same. The office where the money for such redemption can be paid is the County Treasurer's Office at Mineola, L. I., between the hours of nine o'clock in the forenoon and four o'clock in the afternoon.

In the event of such property not being redeemed within the time stated, the undersigned purchaser of such property at such tax sale elects to accept a deed of conveyance of such property as provided by Section 5–51.0 of the Nassau County Administrative Code.

The property to be redeemed is shown on the Nassau County Land and Tax Map as

| | |
|---|---|
| School District | 4 |
| Section | 56 |
| Block | G |
| Lots | 17 |

GRACE E. CONNOLLY

NOTE PARTICULARLY:    That a bill of the amount necessary to redeem should be applied for at once to the County Treasurer at Mineola, N. Y., who has charge of the collection of all tax arrears.

IN CORRESPONDENCE PLEASE REFER TO CERT. NO. 1966  Dec. 1948

MILDRED McGINITY, Attorney
194 Old Country Road
Mineola, L. I., New York

It is argued by defendant that that notice fails to set forth by exact date *the first day* on which the lien holder will be entitled to obtain the deed if the property is not redeemed. The applicable language employed in the notice is: " If the property is not redeemed on or before December 19, 1950, the purchaser may elect to accept a deed of conveyance of same." The town also claims lack of strict conformity to the ordinance (§ 5–51.0) in that the notice gives the date of the tax sale as " December 1948 " instead of stating the exact day.

The court is aided in its disposition of the above objections to the form of the tax foreclosure proceeding by the provisions of the Nassau County Administrative Code wherein it declares that the tax deed vests an absolute estate in fee in the purchaser of the lien (§ 5–53.0) and that redemption must be effected before the delivery of the tax deed (§ 5–50.0). In addition, adoption of the argument of the town's attorney would be to visit upon an innocent tax lien purchaser the severest of penalties, viz.: forfeiture, sought to be imposed because of a super technical objection raised by one not actually aggrieved by the alleged omission but who merely is seeking at this time, excuses and escapes to avoid the consequences in this suit of its own default in the tax lien proceeding in order to desperately bolster up some kind of opposition to this action brought by plaintiff to clear its title. There is no proof that at the time the foreclosure proceeding was in progress the town of Hempstead or anyone else having a right to do so was interested in redeeming the property. Setting up straw men who theoretically could have been minutely misled by the microscopic immaterial inaccuracies contained in the notice, forms no just basis for declaring the tax lien foreclosure proceeding and resulting deed void, when, in fact, no one was misled.

The failure of the notice to set forth the exact date of the tax sale, if the law required that precision in all instances, as viewed at this stage, is immaterial. I consider that the " notice to owner by holder " was, under the circumstances, adequate.

Having disposed of the first two issues in this trial, I will treat with the remaining two issues which are the validity of the respective claims of title of plaintiff and defendant.

The " common lands " including the *locus in quo* were acquired by patent by the Town of Hempstead from the colonial governors of New York. It is agreed by counsel that the town could divest itself of its " common lands " title only by vote of the inhabitants taken at a town meeting or at a town election.

The source to ascertain what action if any had been taken would be the public records of the Town of Hempstead. These have been preserved as carefully as could be expected under the circumstances and are and always have been available to the public. They have been consulted by both sides. It is stipulated that they are incomplete and that the records for the first fifteen years of the existence of the Town of Hempstead '' are missing ''. That presents a serious situation as to the title at bar because counsel also agree that the existing public town records fail to reveal any action by the town by allotment or by deed showing its divestiture not only of the *locus in quo* but also of approximately 40% of the common lands of the town. In other words, 40% of the uplands or common lands of the town of Hempstead, to which it formerly had title, are now and have been for centuries in private ownership with no public record to support the basic title of each parcel, to wit: the grant, allotment or deed out of the town.

Confronted by that negative, should this court come to a halt and dismiss the complaint? I think not. I regard it to be the duty of this court to examine all of the proof in a search for secondary evidence which may show that the town did in fact act. The proof before me, plus judicial notice which I am obliged to take, is that the uplands or commons within the boundaries of the town of Hempstead are, (1) owned and occupied by their current title holders and that their predecessors in title similarly owned and occupied those lands; and (2) that the ownership and possession of those title holders have been peaceable and undisturbed for centuries. No record of an ejectment proceeding's having been instituted by the town or by anyone or even a claim of that nature has been brought to this court's attention, based upon that void (no town divestiture) in the title chain above mentioned. There is no proof that the titles to the 40% are not as solidly and firmly anchored as the rest of the uplands or commons because they, too, have enjoyed that same undisturbed and peaceful ownership and possession as the 60%, in spite of the fact that there are no public records concerning them for the town's first fifteen years' existence. No one will suggest that the titles to 40% of the former town of Hempstead commons are tainted because of the '' missing '' records.

The proof before this court is to the effect that from the early days of the colony of New York until this suit was instituted, no question has ever been raised as to the title of the

*locus in quo* based upon the lack of proof of the town's divestiture of its title. It is true that no record of the town's grant, allotment, deed or any authorization with respect to the *locus in quo* appears in the public records. Considering, however, the centuries of undisturbed active occupancy of the chain of title holders of that property I must hold that the town divested itself of its title and that it did so in the first fifteen years of the town's existence as to which period the original town records are missing.

That point having been decided, the legal question of whether the issuance of such an allotment, grant or deed may be established other than by the instrument or record itself is projected. The answer must be in the affirmative. In the first place, any facts in a civil suit may be proved by circumstantial evidence. However, in *Masterson* v. *Harris Co. Houston Ship Channel Nav. Dist.* (15 S. W. 2d 1011; 67 A. L. R. 1324), a Texas case, a missing deed was established by circumstantial evidence. The comment (67 A. L. R. 1333) was to the effect that Delaware, Massachusetts, Missouri, Oklahoma and Texas had approved such rule of evidence.

Adverse possession is clearly established by plaintiff. The town attorney concedes the possession but questions its legal effect when applied to a municipality. I find that the cases hold that where lands are held by a municipality in its governmental capacity they may not be lost by the adverse possession of others but when held in its proprietary capacity, there is no such immunity against adverse possession (*Timpson* v. *Mayor of City of New York*, 5 App. Div. 424; *Knapp* v. *City of New York*, 140 App. Div. 289; *City of New York* v. *New York Central R. R. Co.*, 198 App. Div. 517, affd. 234 N. Y. 113).

There is no proof that these commons were being reserved for a governmental purpose. The proof is that the town has never used or attempted to use them except to hold them. In other words, the commons just laid idle for years upon years. That is inconsistent with a holding for governmental purposes. If the town is to avail itself of the municipal immunity from the prescription rule, I think it was required to adduce some proof that the *locus in quo* was reserved for some governmental purpose. The town's failure to assert its title or to use the lands — both failures continuing over centuries — establishes sufficiently that the lands were not held for governmental purposes but were held by the town in its proprietary capacity. As such, the *locus in quo* was not free from the legal effects of adverse possession.

In its counterclaim, defendant alleged that it was the sole owner of the land in suit by virtue of its ancient patents and deeds and that it at all times exercised dominion over it. Its proof has not sustained that claim. I consider that plaintiff, by a preponderance of evidence, has established a sufficient record title as well as title by adverse possession of the land in suit.

Judgment, with costs for plaintiff, will be entered for the relief demanded in the complaint and in the counterclaims contained in the reply and dismissing the counterclaim set forth in the answer.