SAMUEL GOLDMAN *v.* RALPH QUADRATO

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued May 3—decided May 31, 1955

*Richard M. Feingold,* with whom, on the brief, was *Marshall S. Feingold,* for the appellant (plaintiff).

*George J. Crocicchia,* for the appellee (defendant).

O'SULLIVAN, J. The plaintiff brought this action to recover damages for trespass. He furthermore sought an injunction ordering the defendant to remove a wire fence and to desist from using a portion of a concrete stairway standing upon land claimed to be owned by the plaintiff. The defendant, in his answer, denied that the plaintiff was the owner and in possession of the strip of land in question and, in a special defense, alleged title to the strip by adverse possession. The defendant also filed a counterclaim setting forth the allegations of the special defense and claiming damages for injury to his land occasioned, it was alleged, by the fact that

the plaintiff removed lateral support when he excavated for the erection of a building. In addition to damages, the defendant sought an injunction enjoining the plaintiff from trespassing on his land and requiring the plaintiff to restore the lateral support. The court rendered judgment for the defendant on the complaint and counterclaim, and the plaintiff has appealed.

The facts are not in dispute: The parties to the litigation are adjoining landowners of properties located on the southerly side of Meriden Road in Waterbury. The land of the plaintiff lies on the easterly side of that of the defendant. The properties are designated as lots 2 and 3 upon an officially recorded map of a development known as Hamilton Park Addition. The defendant bought lot 2 in 1918, and the plaintiff, lot 3 in 1951. The city of Waterbury had previously been the owner of the latter lot, having obtained title to it in 1923 by virtue of a judgment foreclosing a tax lien. After holding the property for many years, the city conveyed it in 1947 to James R. Lawlor, who shortly thereafter sold it to the plaintiff's grantor.

During 1923, the city laid a sidewalk along the southerly side of Meriden Road. As a necessary part of the project, it constructed a retaining wall along the northerly boundary of lot 2 and, as a means of access from the sidewalk to the defendant's house on that lot, erected several concrete steps. A portion of the steps was placed, through mistake, on lot 3, then owned by the city. To protect the steps, the city also built, on lot 3, a retaining wall running southerly from the sidewalk for a distance of six feet. In 1924, the defendant, believing that the two retaining walls and the steps had been built on his land, extended the six-foot wall southerly to a point

near the southeast corner of his lot and embedded a wire fence into the top of the wall.

The area bounded by the sidewalk on Meriden Road, by the east face of the six-foot retaining wall and the extension thereof, and by the east boundary of the defendant's lot as described in his deed lies entirely within lot 3 and is the subject matter of this litigation. It is roughly triangular in shape, with a base of 3.91 feet at the sidewalk and sides extending southerly for about 110 feet. The defendant has continuously since 1924 exercised various acts of ownership over it. He has used the concrete steps in going to and from his house, has maintained the wall and fence running southerly from the sidewalk, and has put vegetable gardens and flower beds along the wall. His uninterrupted possession for twenty-eight years has been under a claim of right and with an intent to use the area as his own. The possession has been open, visible and exclusive, and without license or consent by the owners of lot 3. In 1952, the plaintiff erected a one-story building on lot 3. The excavation made by him in the course of construction removed the lateral support of some of the land in the disputed area, and the wall and fence collapsed. Further cave-ins are likely, and these may extend beyond the disputed area into lot 2.

The court concluded that title to the triangular strip was in the defendant, first, because the city of Waterbury, while the owner of lot 3, had abandoned the strip, and, secondly, because the defendant had acquired title to it by adverse possession. The first of the foregoing reasons was unsound. A legal title perfected into a grant or vested by deed or by judgment may never be lost by abandonment.[1] *W. F.*

---

[1] As to abandonment of other rights in property, see *Derby* v. *Alling*, 40 Conn. 410, 436, as modified by *Phillips' Appeal*, 113 Conn.

*Miller Co.* v. *Grussi,* 90 Conn. 555, 558, 98 A. 90. Once a legal title vests, whether in an individual or in a public or private corporation, the title remains vested until it passes by grant, descent, adverse possession, or some other operation of law such as escheat or forfeiture. *Walker* v. *Polk,* 208 Miss. 389, 410, 44 So. 2d 477; *Matter of City of New York (Realty Associates),* 256 N.Y. 217, 221, 176 N.E. 171; *Indiana County Petition,* 360 Pa. 244, 249, 62 A.2d 3; 5 Thompson, Real Property (Perm. Ed.) § 2567; 4 Tiffany, Real Property (3d Ed.) § 965; 2 American Law of Property, § 8.98; 1 Am. Jur. 5, § 6. Title to realty does not pass merely through the inaction of its owner. *Faulks* v. *Schrider,* 69 App. D.C. 137, 140, 99 F.2d 370.

There is merit, however, in the court's second reason for deciding that the defendant had title to the disputed area. The essential elements of an adverse possession sufficient to create title to land in a claimant are that the owner shall be ousted of possession and kept out uninterruptedly for fifteen years by an open, visible and exclusive possession by the claimant under a claim of right, with intent to use the property as his own, and without license or consent by the owner. *Schroeder* v. *Taylor,* 104 Conn. 596, 605, 134 A. 63; *Palmieri* v. *Bulkley,* 137 Conn. 40, 42, 74 A.2d 475; *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 695, 88 A.2d 379; General Statutes § 8314. In order to find that the required fifteen years had elapsed, the court necessarily made use of the period during which the city of Waterbury was the owner of lot 3 by virtue of its foreclosure of a tax lien.

Title to realty held in fee by a state or any of its

40, 45, 154 A. 238; *Peck* v. *Lee,* 110 Conn. 374, 378, 148 A. 133; *Glotzer* v. *Keyes,* 125 Conn. 227, 236, 5 A.2d 1 (dissenting opinion).

subdivisions for a public use cannot be acquired by adverse possession. *San Francisco* v. *Bradbury,* 92 Cal. 414, 418, 28 P. 803; *Norrell* v. *Augusta Ry. & Electric Co.,* 116 Ga. 313, 315, 42 S.E. 466; *Savoie* v. *Town of Bourbonnais,* 339 Ill. App. 551, 558, 90 N.E.2d 645; *Burbank* v. *Fay,* 65 N.Y. 57, 69; *Tissino* v. *Mavrakis,* 67 Wyo. 560, 585, 228 P.2d 106; 10 McQuillin, Municipal Corporations (3d Ed.) § 28.55; 1 Am. Jur. 849, § 105; 2 C.J.S. 528, § 14. Adverse possession will run against a municipality, however, as to land which is not held for a public use. *Ames* v. *San Diego,* 101 Cal. 390, 394, 35 P. 1005; *Robinson* v. *Lemp,* 29 Idaho 661, 669, 161 P. 1024; *Chicago* v. *Middlebrooke,* 143 Ill. 265, 269, 32 N.E. 457; *Long Island Land Research Bureau, Inc.* v. *Town of Hempstead,* 203 Misc. 619, 626, 118 N.Y.S.2d 39, aff'd, 283 App. Div. 663, 126 N.Y.S.2d 857; *Turner* v. *Commissioners,* 127 N.C. 153, 155, 37 S.E. 191; *Ebell* v. *City of Baker,* 137 Ore. 427, 439, 299 P. 313; 10 McQuillin, op. cit., § 28.55; 1 Am. Jur. 850, § 105.

After title to lot 3 passed to the city of Waterbury by virtue of a judgment foreclosing a tax lien, the lot was permitted to lie idle. It was neither used for nor dedicated to any public purpose. It remained, so to speak, legally fallow, a vacant parcel of land in which the public were given no beneficial rights, to be enjoyed presently or in the future. The city was at liberty to sell or otherwise dispose of the lot at pleasure. Under these circumstances, the lot was not devoted to a public use. The inevitable result was that, as regards adverse possession, the city held the lot subject to the same legal consequences as would have ensued if an individual had been its owner. *Chicago* v. *Middlebrooke,* supra. Nor is there any decisive significance to the fact that the lot was

acquired by the city in performing its governmental duty of collecting taxes. The controlling factor is the use to which the realty was put after its acquisition. We do not accept the reasoning of courts of other jurisdictions which appear to take a contrary view. See *Anglo California National Bank* v. *Leland,* 9 Cal. 2d 347, 353, 70 P.2d 937; *Sasse* v. *King County,* 196 Wash. 242, 249, 82 P.2d 536.

Whether possession is adverse in character is a question of fact. *Padula* v. *Padula,* 138 Conn. 102, 110, 82 A.2d 362. Since the court found all the essential elements of an adverse possession, and since title by that method was legally possible as against the city, the court was correct in its judgment.

There is no merit to the claim that the court erred in entering a mandatory injunction requiring the plaintiff to supply lateral support to the defendant's land.

There is no error.

In this opinion the other judges concurred.