[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Dean A. Pegolo and Marilena Pegolo, brought this action to quiet title to a parcel of land in Middletown known as "Halloran Street". Plaintiffs' claim is based on a theory of adverse possession. The defendants, Lewis T. Dunn, Eugene R. Olson, Pauline E. Dunn, CT Page 789 Olive A. Dunn, Violet A. Dunn, James F. Dunn, Jr., and Philip C. Dunn, have counterclaimed to quiet title on their own behalf. The City of Middletown originally was a defendant in this action but disclaimed any interest in Halloran Street, averring that the city had never accepted the street as a city street. The plaintiffs thereafter withdrew the action against the city but continued the action against the last record owner of Halloran St., the heirs of the late James F. Dunn. At the time of trial, Marilena Pegolo was added as a plaintiff and George and Mary Nosal withdrew as plaintiffs.
FACTS
On the basis of the stipulations of fact dated January 23, 1990 and June 19, 1990 and the credible evidence, the court finds the following facts proven.
The plaintiffs, Dean A. Pegolo and Marilena Pegolo, are owners of real property known as 91 Butternut Street, Middletown, Connecticut. That property consists of Lot #13 on Dunn Street and Lot #2 on Butternut Street. Plaintiffs purchased the property from Frank Fosa, now deceased, by warranty deed dated March 13, 1985 and recorded that day in the Middletown Land Records in Volume 717 at Page 11. Mr. Fosa had owned and resided at 91 Butternut Street for the previous thirty-two years.
Forming the southerly boundary of the plaintiffs' property is a parcel of land known as Halloran Street, an undeveloped "paper street" never accepted by the City of Middletown as a public street. As stipulated, James F. Dunn was the record owner of said Halloran Street by quit-claim deed dated January 31, 1906 and recorded in the Middletown Land Records in Volume 135 at Page 570. James F. Dunn died intestate on August 19, 1955 without ever having conveyed said property. There were no probate proceedings with respect to Halloran Street. The defendants who testified did not know James F. Dunn owned Halloran Street at the time of his death but assumed that he had conveyed it to the City of Middletown.
The heirs of James F. Dunn are the record owners of Halloran Street, upper and lower. The heirs and their respective interests are as follows:
 1. Lewis T. Dunn . . . . . . . . . . . 20% 2. Eugene R. Olson . . . . . . . . . . 20% 3. Olive A. Dunn . . . . . . . . . . . 20% 4. Pauline E. Dunn . . . . . . . . . . 20% CT Page 790 5. Violet A. Dunn . . . . . . . . . . 10% 6. James F. Dunn, Jr. . . . . . . . . 5% 7. Philip C. Dunn . . . . . . . . . . 5% 100%
While Mr. Fosa owned his property, he made frequent use of portions of Halloran Street, particularly allowing guests to park on the gravel driveway over part of Halloran St., which presently is the only access by motor vehicle to that property. Mr. Fosa did not have a motor
vehicle. In addition, he mowed and performed other work on the remaining portion of Halloran St. Members of the Dunn family, as well, periodically mowed and performed other work on the Halloran Street property. The Pegolos have made extensive use of the driveway portion, have mowed the grass area and have constructed a concrete block wall extending from their property onto Halloran Street. Members of the Dunn family have continued to work from time to time on the Halloran Street property along with the Pegolos.
The court further finds as follows:
During Frank Fosa's period of ownership of 91 Butternut Street he told a neighbor that Halloran Street was a city street, belonged to the city, and would someday be paved as a street and used for access to back land.
Before the death of James F. Dunn in 1955, Halloran Street (along with adjoining Dunn properties) was used as pasturage for one or more cows owned by James F. Dunn. After the death of James F. Dunn in 1955, Halloran Street was used (with other adjoining properties) as a hay lot. Robert Olson (son-in-law of James F. Dunn) arranged for workmen and machinery to come each year to harvest the hay. The workmen and their equipment used parts of Halloran Street for entrance to and exit from the fields to be hayed.
In 1973, because of complaints about bees, Robert Olson and his son, the defendant Eugene Olson, began to mow upper Halloran Street (together with adjoining Dunn family properties) rather than let it go to hay. They used power mowers. In 1973, Frank Fosa asked Eugene Olson to mow the grass on 91 Butternut Street, since Eugene Olson was mowing Halloran Street and adjacent Dunn properties anyway. Eugene Olson agreed, and thereafter Frank Fosa mowed neither Halloran Street nor 91 Butternut Street.
From 1973 to the time of trial, Eugene R. Olson mowed Halloran Street, although after the Pegolos purchased CT Page 791 91 Butternut Street in 1985, they mowed, as well. No one has ever prevented Olson from doing so, nor did anyone prevent the Pegolos from doing so.
Frank E. Fosa died January 23, 1984. After Frank Fosa died, Eugene Olson continued to mow the lawn around 91 Butternut Street and Halloran Street.
On March 13, 1985, approximately thirteen months after Frank Fosa died, his executor, Richard J. Guiliani, Esq., conveyed 91 Butternut Street to the plaintiffs and Dino V. Pegolo by an executor's deed which did not purport to convey any part of Halloran Street.
Neither Frank Fosa, his executor, nor the Pegolo plaintiffs possessed Halloran Street exclusively at any time nor was Frank Fosa's use of Halloran Street hostile or adverse to the rights of the James F. Dunn or his heir.
 II.
LAW
In an adverse possession claim, the plaintiff has the burden of proof to establish his claims by clear and positive proof. Barrs v. Zukowski, 148 Conn. 158, 165, 166
(1961). "The essential elements of an adverse possession sufficient to create title to land in the claimant are that the owner shall be ousted of possession and kept out uninterruptedly, for a period of fifteen years by an open, visible, and exclusive possession by the claimant, without the license or consent of the owner. "Barrs, supra, p. 166; Sec. 52-575 of the General Statutes." ". . .whether possession is adverse is a question of fact for the trier." Barrs, supra, 166.
In a quiet title action, a defendant who asserts a defense of adverse possession has the burden of proving adverse possession. Whitney v. Turmel, 180 Conn. 147,148, 429 A.2d 826 (1980); Schlough v. Ruley, 1 Conn. App. 119, n. 3, 468 A.2d 1272 (1983).
A claim of adverse possession requires a higher burden of persuasion than is required in an ordinary civil action. Woycik v. Woycik, 13 Conn. App. 518, 537 A.2d 541
(1988).
"Preponderance of the evidence" is not the burden of proof to establish adverse possession; the proper standard is "clear and positive proof"; Clark v. Drska, 1 Conn. App. 481, CT Page 792473 A.2d 325 (1984); which is the same as "clear and convincing evidence." Sands Associates v. Rios,6 Conn. App. 84, 87, 503 A.2d 179 (1986).
One requisite to acquiring property by adverse possession is exclusive possession for the fifteen-year period. That condition is not met if a claimant merely shares dominion over the disputed property with other users. Short Beach Cottage Owners Improvement Association v. Stratford, 154 Conn. 194, 199, 224 A.2d 532 (1966). A gap in the necessary fifteen-year period is fatal to the adverse claim. Marquis v. Drost, 155 Conn. 327, 332, 231 A.2d 527
(1967). A claimant cannot "tack on" his possession to possession of one who died, when there is a hiatus between the two possessions. Gray v. Hudson, 34 Conn. Sup. 31, 43,375 A.2d 1039 (1974), affirmed 173 Conn. 230, 377 A.2d 295
(1977).
An owner of real property is considered in constructive possession of his property unless another is in actual possession. If the possession of two adverse claimants is not connected and continuous, they lack privity of possession, and the possession of the true owner intervenes constructively between them. See Smith v. Chapin, 31 Conn. 530, 531 (1863). Adverse claimants who assert the benefit of "tacking" have the burden of proving the adverse interest of their predecessors. Marquis v. Drost, 155 Conn. 327, 330-31, 231 A.2d 527 (1967).
The elements of adverse possession include the requirement that the claimant (and any necessary predecessor in possession) possessed the land "with intent to use the property as his own." Goldman v. Quadrato, 142 Conn. 398,402, 114 A.2d 687, 55 A.L.R.2d 549 (1955).
Once legal title vests, whether in an individual or in a public or private corporation, the title remains vested until it passes by grant, descent, adverse possession, or some other operation of law such as escheat or forfeiture. . . Title to realty does not pass merely through the inaction of its owner. Id.
 III.
DISCUSSION
Based on the foregoing facts, in light of the applicable law, the court concludes that the plaintiffs failed to establish by the requisite standard the elements of an adverse possession claim. In particular, plaintiffs CT Page 793 did not prove that the use of Halloran Street by plaintiffs and their predecessor in title was exclusive, continuous or adverse to the true owners, the heirs of James F. Dunn. As defendants point out in their briefs, the position of the plaintiffs is untenable as a matter of logic, given their claim of only a portion of Mr. Fosa's period of asserted possession for their purposes. The inconsistent positions taken by plaintiffs during the course of the action seriously undermines their credibility. Further, the gap following Mr. Fosa's death deals a fatal blow to their adverse possession claim. The court disagrees with the plaintiffs' argument that defendants bear the burden of rebutting a presumption of possession by the fiduciary which rises to the level of continued assertion of an adverse possession claim.
In essence, however, the plaintiffs claim fails on fundamental grounds, — failure to prove by clear and positive proof exclusive continuous and adverse use of the premises in question for the required period.
As to the counterclaim, the court is satisfied that title should be quieted in favor of the defendants in accordance with the ownership shares stipulated. The claim of title of defendants was proven by the appropriate standard of proof. For the foregoing reasons, judgment is entered on the complaint and on the counterclaim in favor of the defendants.
SCHALLER, J.
Judgment Entered in Accordance with Foregoing Memorandum of Decision.
Michael Kokoszka, Chief Clerk