## FRANCINE M. GALLO-MURE *v.* JAMES TOMCHIK ET AL.
### (AC 22606)

Schaller, Flynn and West, Js.

---

Argued May 30—officially released August 19, 2003

*Brian P. Daniels*, for the appellants (defendants).

*Vincent N. Amendola, Jr.*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendants, James Tomchik, Maureen Tomchik, Frank Bisecco and Betsy Bisecco, appeal from the trial court's judgment determining that the plaintiff, Francine M. Gallo-Mure, holds a prescriptive easement over the defendants' premises. The defen-

dants argue on appeal that the court acted improperly in two ways: (1) its factual finding of "implied consent" in its first articulation was inconsistent with its judgment granting a prescriptive easement; and (2) the court's finding of continuous use of the property was clearly erroneous in light of the evidence presented that a fence had blocked the plaintiff's access from 1971 through 1986. We are not persuaded by either claim and therefore affirm the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff has lived on her property at 15 Annawon Avenue in West Haven since May, 1971. The defendants all reside on Ocean Avenue, which runs perpendicular to Annawon Avenue. The Biseccos moved to 185 Ocean Avenue in 1996, and the Tomchiks moved in next door at 183 Ocean Avenue in 1999. These two lots are adjacent to each other and are bordered on the south by Long Island Sound. The defendants share a common driveway that allows them to access Ocean Avenue. This driveway runs behind the rear of the plaintiff's property on Annawon Avenue. The underlying claim ensued when the Tomchiks began constructing a fence that would have blocked the plaintiff's access to the driveway.

The plaintiff claimed that she had prescriptive easement rights to drive on the defendants' driveway and to park her vehicles on it because she had used the property openly, visibly, continuously and uninterrupted for more than fifteen years under a claim of right. The plaintiff sought and was granted a temporary injunction until such time as the matter could be resolved.[1]

---

[1] In their answer to the plaintiff's complaint, the Tomchiks denied the plaintiff's allegations and filed counterclaims sounding in trespass and unjust enrichment. The Biseccos also denied the plaintiff's allegations and filed counterclaims sounding in fraud, trespass, quiet title and unjust enrichment. On appeal, the two sets of defendants were represented by the same counsel, although they were represented separately at trial. The defendants also challenged the trial court's denial of the trespass and quiet title counter-

At the ensuing trial to the court, the plaintiff testified that she had been using the driveway as a right-of-way to access the rear of her property and to park her vehicles since she moved to Annawon Avenue in 1971. The plaintiff testified that she had never sought nor received permission from any of the Ocean Avenue property owners and denied the allegation that a fence had ever blocked her from accessing the right-of-way. The defendants presented testimony and evidence, which the plaintiff disputed, that the plaintiff had sought and received permission from some of the owners of the Ocean Avenue properties, and that a fence had existed until the plaintiff commenced renovations on her property in 1986.

The court made the following findings. First, the court found that the plaintiff had begun using the right-of-way immediately upon moving to the property in 1971 and that this use was made without objection from her then neighbor, Robert Squeglia, one of the predecessors in title to the Tomchiks. Second, the court found that the plaintiff "at all times" indicated that she had a right to use the driveway for access and that "no one was going to stop her." Third, the court found that the plaintiff had sufficiently proved that her use of the right-of-way was continuous by a preponderance of the evidence, despite the evidence presented by the defendants that a fence formerly had extended across the rear of the plaintiff's property, blocking her access to the right-of-way. On the basis of its findings, the court concluded that the plaintiff had shown by a fair preponderance of the evidence that she had made use of the common driveway in an open, visible, continuous and uninterrupted manner in excess of fifteen years under a claim of right. However, the court found that the plaintiff did not meet her burden of proof in establishing

claims. Because we find that the trial court did not act improperly in finding that a prescriptive easement existed, we do not reach the counterclaims.

the elements of a prescriptive right to park her vehicles on the driveway, stating in particular that "[w]hen asked to move [her] vehicles, [she] did so even to the extent of her husband parking his vehicle on Annawon Avenue when asked to remove it." Posttrial, the defendants filed a motion for articulation of the memorandum of decision. The court subsequently issued two articulations, one of which contains the basis of one of the defendants' claimed errors.

## I

We first address the defendants' claim that the court's factual finding of implied consent in its first articulation was inconsistent with its ultimate finding of a prescriptive easement. The court's finding read: "As for the issue of implied consent, the testimony of Mr. Squeglia and [Donna] Buonfiglio indicates that there was an *implied consent* on their part. In fact, both Squeglia's and Buonfiglio's testimony showed an *acquiescence* as to her use of their property. Mr. Squeglia even asked her to participate in the cost of snow removal since she was making use of the property." (Emphasis added.) The defendants argue that the court's use of the term "implied consent" requires a reversal of the court's decision because this term is inconsistent with the legal conclusion that a prescriptive easement existed.[2] We conclude that the court's findings of fact were not legally or logically inconsistent with its conclusion that a prescriptive easement existed and, therefore, its conclusion was not improper.

There is a dispute among the parties regarding the standard of review for the defendants' claim. The defendants argue that we must use plenary review to deter-

[2] The defendants presume in their brief, and in fact articulated as such in oral argument, that "implied consent" is the same as "implied permission." We do not make such an assumption and look at the term in context with the entire articulation and the underlying memorandum of decision.

mine whether the trial court's conclusion that a prescriptive easement existed is legally and logically correct and finds support in the facts set forth in the memorandum of decision. The plaintiff argues that the establishment of a prescriptive easement is a question of fact, and, therefore, the clearly erroneous standard of review is appropriate. The plaintiff is correct that, generally, "[w]hether a right-of-way by prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered." (Internal quotation marks omitted.) *Faught* v. *Edgewood Corners, Inc.*, 63 Conn. App. 164, 168, 772 A.2d 1142, cert. denied, 256 Conn. 934, 776 A.2d 1150 (2001). However, except as to the defendant's claims as to a fence interrupting the necessary fifteen year continuous use to establish a prescriptive easement, the court's factual findings in the present case are not challenged by either party. The only issue raised by the defendants' first claim is whether the trial court's conclusion that a prescriptive easement existed was inconsistent with its subordinate factual findings. Therefore, we apply the following standard of review to the first claim. "[Findings of fact] that there had been an open, visible, continuous and uninterrupted use for fifteen years under a claim of right, as found by the trial court, are not reviewable unless the subordinate facts on which they are based are legally and logically inconsistent or are insufficient to support the conclusion that they exist." *Wadsworth* v. *Zahariades*, 1 Conn. App. 373, 376, 472 A.2d 29 (1984).

We begin our analysis by setting forth the elements necessary to establish a prescriptive easement. "[A] prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. . . . The standard of proof that is required is a fair preponderance

of the evidence." (Citation omitted.) *Gioielli* v. *Mallard Cove Condominium Assn., Inc.,* 37 Conn. App. 822, 829, 658 A.2d 134 (1995). "To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised. . . . The use must occur without license or permission and must be unaccompanied by any recognition of [the right of the owner of the servient tenement] to stop such use." (Citation omitted; internal quotation marks omitted.) *Kelley* v. *Tomas,* 66 Conn. App. 146, 159, 783 A.2d 1226 (2001). "Use by express or implied permission or license cannot ripen into an easement by prescription." *Phillips* v. *Bonadies,* 105 Conn. 722, 725, 136 A. 684 (1927).

After reviewing the memorandum of decision, the court's articulations, the record and the parties' briefs, we have reached three conclusions. First, the word "consent" is not synonymous with the word "permission" in its legal application to easements. Second, there is a cognizable difference between permissive use of property and "passive acquiescence" by owners in the use of their property. Third, and finally, the court did not find that the plaintiff's use was permissive, but rather, it found that such use was with the acquiescence of the owners of the servient tenement, which, under our law, does not negate a claim of right. Therefore, the court's judgment that there was a prescriptive easement is not illogical or inconsistent with a finding of implied consent.

In examining this issue, we first address whether "permission" equates to "consent" under the law. Although in everyday use, the words are often used interchangeably, our case law uses "permission" when reviewing prescriptive easement claims. To defeat a finding of use as a claim of right, which is required to establish a prescriptive easement, the word "permis-

sion" is invariably used. See *Hoffer* v. *Swan Lake Assn., Inc.*, 66 Conn. App. 858, 860, 786 A.2d 436 (2001).[3] "Permission" generally is preceded by the term "license" in prescriptive easement cases. See id. However, the word "consent" is not listed with these two terms. The defendants improperly have equated "implied consent" with "permission" without citing to one instance in which "implied consent" specifically was used as a legal standard to defeat a prescriptive easement.

The word "consent" has been used in the legal analysis of claims of adverse possession to negate the necessary element of hostile possession. See, e.g., *Goldman* v. *Quadrato*, 142 Conn. 398, 402, 114 A.2d 687 (1955); *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 842, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). However, the legal standards for adverse possession and prescriptive easement claims are not interchangeable.[4] *Top of the Town, LLC*, concerned an adverse possession claim and, therefore, is not directly controlling on the present case. However, even if it were controlling, it nevertheless is factually and legally distinguishable from the present case. In *Top of the Town, LLC*, we used the term "consent" while setting forth the standard for establishing

[3] The following cases also involve prescriptive easements in which the term "permission" is used: *Westchester* v. *Greenwich*, 227 Conn. 495, 501, 629 A.2d 1084 (1993) ("use by express or implied permission or license cannot ripen into an easement by prescription"); *Aksomitas* v. *South End Realty Co.*, 136 Conn. 277, 283, 70 A.2d 552 (1949) ("plaintiff's continuous, open user . . . without resort to permission or license from the defendant . . . establishes that this was a user as of right"); *Kelley* v. *Tomas*, supra, 66 Conn. App. 159 ("use must occur without license or permission"); *Faught* v. *Edgewood Corners, Inc.*, supra, 63 Conn. App. 170 (same).

[4] Prescriptive easements, unlike title gained by adverse possession, do not require exclusive use by the claimant; *Francis* v. *Hollauer*, 1 Conn. App. 693, 695–96, 475 A.2d 326 (1984); and the burden of proof is by preponderance of the evidence rather than by clear and convincing evidence required by adverse possession. *Schulz* v. *Syvertsen*, 219 Conn. 81, 91, 591 A.2d 804 (1991).

adverse possession rights. In that decision, we indicated that the possession must be "without consent." *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.,* supra, 842. However, the term was not used in lieu of "permission," and was not modified by "express or implied." Further, we acknowledged that a claim of adverse possession was distinct from a prescriptive easement claim by stating: "As with a prescriptive easement, implied permission by the true owner is not adverse." Id., 845. The use of "implied consent" in the first articulation is therefore not legally controlling over the present prescriptive easement claim. The *Top of the Town, LLC,* case is also factually distinguishable from the present case in that it concerned a situation in which the plaintiff had obtained express permission to use the property from a landowner who subsequently died. The continued use of the property after the landowner's death indicated implied permission and not adverse use under a claim of right. Id. In contrast, the court in the present case found that no express permission had ever been given to the plaintiff.[5]

The law is clear that "permission" defeats a claim to a prescriptive easement. However, focusing on the court's use of the term "implied consent" in its articulation will not, by itself, lead us to a determination that the court reached an illogical or inconsistent conclusion. We next look to the legal distinction between the terms "permission" and "acquiescence" and determine whether the court's factual findings support a finding of one or the other based on its use of the term "implied consent."

There is a distinction made in our case law between the terms "permission" and "acquiescence" in the con-

---

[5] "Consent" was used by our Supreme Court in *Goldman* in the same manner, to set forth the legal standard for adverse possession. See *Goldman* v. *Quadrato,* supra, 142 Conn. 402.

text of a prescriptive easement claim. On this point, the following excerpt from *Phillips* v. *Bonadies*, supra, 105 Conn. 726, is particularly illuminating: "In the very nature of [prescriptive easement] case[s] . . . . every such user is by permission of the owner of the servient tenement in the sense that he permits it to continue without exercising his right to terminate it. *A permissive user therefore as distinguished from one exercised under a claim of right is not to be inferred from mere passive acquiescence.* The facts and circumstances must be such as to warrant the inference of a license exercised in subordination to the rights of the owner of the soil and which he may revoke at any time." (Emphasis added.) As the *Phillips* court admonished, permissive use should not be confused with "passive acquiescence." The two terms have vastly different impacts. If there is permission granted to use the contested property, then the user of the land is acting in subordination to the ownership rights of the servient landowner, and the claim of prescriptive easement arising out of his use is negated. In contrast, passive acquiescence does not indicate such subordination and permits the finding of a prescriptive easement. Id. For this reason, *Phillips* emphasized the importance of an indication of subordinate conduct in determining whether there was permissive or acquiescent conduct.

Subordinate conduct is the "essential quality" in determining whether a claim of right has been established. *Kelley* v. *Tomas*, supra, 66 Conn. App. 159. The essence of the determination of whether the claim to the property was made "as of right" is therefore whether the individual claiming the prescriptive easement acknowledged the ownership rights of the landowner in any way. Consequently, the court's findings of fact regarding whether the plaintiff acted in subordination to either the defendants or the defendants' predecessors in title is extremely persuasive to determine whether

the court's use of "consent" was consistent with permissive, rather than adverse, use of the property.[6] The court considered the surrounding facts and circumstances and explicitly found that they did not indicate "permission" and that the plaintiff was not subordinate in her use of the right-of-way. In contrast, the court also found that the plaintiff *did* act in subordination to the defendants concerning the right to park vehicles on the driveway, defeating her claim of right to do so. Finally, it is clear that the court used the term "implied consent" in its first articulation to mean "passive acquiescence," as indicated by its findings in the memorandum of decision and given the context of the use of the term in the articulation.

In its memorandum of decision, the court discussed the "claim of right" requirement, noting that the plaintiff made use of the right-of-way "from the very beginning." The court also found it notable that the plaintiff *at all times* indicated that she had a right to use the right-of-way to access her property and that "no one was going to stop her." (Emphasis added.) These findings illustrate that the court credited the evidence that the plaintiff used the right-of-way as if it were her own property, which is the primary indication that the use was not permissive. Although the court did not mention "acquiescence" in the memorandum of decision, its finding was clear—the use was adverse.

The court's holding that the plaintiff had no prescriptive right to park her cars on the driveway is also significant. The court found that the plaintiff had not demonstrated a claim of right to park her cars on the driveway. The court explained that the plaintiff and her

---

[6] "In Connecticut, although the burden of proof is on the party claiming a prescriptive easement . . . there is no presumption of permissive use to be overcome. . . . All that is required is a showing by a fair preponderance of the evidence that the use was adverse." (Citations omitted.) *Reynolds* v. *Soffer*, 190 Conn. 184, 188, 459 A.2d 1027 (1983).

husband moved their vehicles on the servient landowner's request, even to the extent of parking on another street. In contrast, when the plaintiff was threatened with blocked access to the right-of-way, she immediately claimed that no one would stop her from using it. The court relied on the plaintiff's subordinate conduct in refusing to find the existence of one of her claimed prescriptive rights. The fact that the court drew such a distinction indicates that this conduct, or lack thereof, was paramount in its finding of a prescriptive easement.

We now look to the language and context of the court's first articulation. The court stated preliminarily: "As [far as] any *permission being granted or implied,* it was more [that] they never objected to her use of their property to gain access to the rear of her property." (Emphasis added.) The court explained further that the plaintiff consistently had asserted her rights over the property, noting specifically her testimony that she told one of her former neighbors that she did not need permission because she had been using the driveway since she moved onto the property. It was only *after* the court completed its discussion of permission that it referred to "implied consent," which it deemed an "issue." The fact that these issues were explained separately is a strong indication that the court attached different meanings to the words "consent" and "permission."

It is also significant that the court discussed the "acquiescence" of the plaintiff's former neighbors immediately after mentioning that their testimony evinced implied consent. This indicates that the court used "implied consent" in reference to the neighbors' acquiescence insofar as the court emphasized previously that they did not object to the plaintiff's use of the property, though it is clear they could have.

The court used the fact that Squeglia asked the plaintiff to contribute to the cost of snow removal from the

property to indicate such acquiescence. At first blush, this may seem to evince subordination, as the defendants have argued. However, it strengthens the plaintiff's argument that she was using the property under a claim of right. Squeglia did not condition the plaintiff's use on the contribution for snow removal, nor did the plaintiff contribute more money than either of the two property owners. The defendants argue that the fact that the property owners included her in the snow removal agreement indicated that they were implicitly granting her permission to use the driveway. However, where an easement has been created on a common driveway, "[i]t is appropriate that both parties contribute to the maintenance of the driveway because both parties contribute to the wear on the driveway." *Beneduci* v. *Valadares*, 73 Conn. App. 795, 808, 812 A.2d 41 (2002). The record also indicates that this "agreement" was an informal understanding between the users of the driveway and in no way implicated any permission or subordination. This agreement indicates that there was no objection to the plaintiff's use, but it does not illustrate permission, either express or implied. In fact, Buonfiglio testified that she "never gave [the plaintiff] permission. [The plaintiff] was always parking there, but we automatically split the cost of the snow removal because we all used the driveway." This agreement is more consistent with acquiescence—knowledge without objection. The court's reference to "acquiescence" in its articulation, followed immediately by the example of the snow removal agreement, indicates that the court did not find that the agreement constituted implied permission.

There is one final indication that the court intended "implied consent" to equate with "passive acquiescence." The court issued a subsequent articulation following the issuance of the first articulation. In this articulation, the court defined the terms "implied" and

"permission," noting that permission is defined as "a license to do a thing, an authority to do an act . . . ." The articulation further stated that the plaintiff "at no time acknowledged that anyone had a right to terminate her use of the subject property." In issuing this second articulation, the court reaffirmed its position that the plaintiff did not act in subordination to the property owners and, in fact, never recognized any individual's right to terminate her use of the property.

The court's finding of "implied consent" was not inconsistent with its holding that a prescriptive easement had been established. The court's factual findings demonstrate that the court equated what it called "implied consent" with passive acquiescence, as indicated by the court's repeated statements that the plaintiff acted as if she had the right to use the property as her own, as well as by the nature and context of the term's use in the articulation.

II

We now address the defendants' second claim on appeal, that is, whether the trial court improperly found that the plaintiff met her burden of proving continuous use of the right-of-way by a preponderance of the evidence. The dispute regarding whether the use of the right-of-way was continuous hinged on the purported existence of a fence. The defendants contend that a fence extended across the rear boundary of the plaintiff's property from 1971 until "at least mid-1986," blocking her access to the right-of-way. The plaintiff testified that the fence had existed, but did not prevent her access to the right-of-way. The defendants argue that the court's finding on this claim was clearly erroneous. In light of the evidence presented at trial, we disagree.

The standard of review for claims challenging the soundness of a court's factual finding of continuous,

uninterrupted use by the plaintiff in prescriptive ease-
ment cases is well settled: "Whether the requirements
for such a right have been met in a particular case
presents a question for the trier of facts . . . ." (Inter-
nal quotation marks omitted.) *Simonds* v. *Shaw*, 44
Conn. App. 683, 688, 691 A.2d 1102 (1997). "When the
factual basis of the court's decision is challenged, the
reviewing court must determine whether the facts are
supported by the evidence or whether they are clearly
erroneous." *Faught* v. *Edgewood Corners, Inc.*, supra,
63 Conn. App. 168. "A finding is clearly erroneous,
when, even though the finding is supported by some
evidence, the reviewing court, on the basis of all the
evidence, is left with the definite and firm conviction
that a mistake has been committed by the fact finder."
(Internal quotation marks omitted.) *Mastronardi* v.
*Infante*, 34 Conn. App. 584, 591, 642 A.2d 84, cert.
denied, 231 Conn. 907, 648 A.2d 154 (1994). When
employing this standard of review, this court "cannot
retry the facts or pass upon the credibility of the wit-
nesses." (Internal quotation marks omitted.) *East Had-
dam Fishing & Game Club, Inc.* v. *Ciucias*, 4 Conn.
App. 214, 215, 493 A.2d 281 (1985), quoting *Pandolphe's
Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 220, 435
A.2d 24 (1980).

The court was presented with the following evidence.
The plaintiff consistently testified that no fence had ever
blocked her access to the driveway on the defendants'
property. Buttressing the plaintiff's testimony was the
testimony of her former neighbors, Squeglia and Buon-
figlio, who had lived next door to the plaintiff prior to
the defendants. Both neighbors testified that there had
never been a fence blocking the plaintiff's access to
Ocean Avenue and that she had used the driveway con-
tinuously since they had resided in the area (both had
lived there since at least 1980). The plaintiff also offered
the testimony of her neighbor, Gertrude Harris, as well

as the testimony of her husband, Guy Mure, who both confirmed that the fence had not extended past the rear of the plaintiff's property during the contested time period.

In rebuttal, the defendants offered testimony from Rique Lydem, the plaintiff's former husband, who stated that a fence had in fact blocked the plaintiff's access (and his own) to Ocean Avenue from 1971 until he left the premises in 1974. He also testified that his brother had tripped over this fence while chasing a burglar that he had seen across the street. Squeglia's former wife, Claudia Donovan, also testified that the fence had existed until the plaintiff removed it in the course of renovating her property in 1987. The defendants also offered the testimony of a surveyor who interpreted some field notes and a field detail drawing of the plaintiff's property as evidence that a fence had extended behind the property, blocking the plaintiff's access. The defendants argue that this evidence is conclusive because it is the only evidence contemporaneously created and because it is completely unbiased. However, the plaintiff argued that this evidence was misleading, noting that the surveyor testifying about the document had not personally conducted the survey and had also admitted to a discrepancy between the field notes and the map. The defendants also presented photographic exhibits depicting the remnants of the fence and some various metal poles on the relevant properties.

In Connecticut, to obtain an easement by prescription, the use must be continuous for a period of at least fifteen years. *Zavisza* v. *Hastings*, 143 Conn. 40, 45, 118 A.2d 902 (1955). The court found that the plaintiff had established by a preponderance of the evidence that her use of the right-of-way was continuous and uninterrupted for at least fifteen years. In the court's first articulation, it explained that although it did not dispute the documentary evidence, it gave greater

weight to the testimony of Squeglia and Buonfiglio, noting that Squeglia had resided on Ocean Avenue for more than forty years. Because the surveyor had no personal knowledge of the property as it existed at that time, there was no reason for the court to find his testimony dispositive. The court also explained that it gave little weight to the testimony of Lydem, because he is the plaintiff's former husband, or Donovan, because she had testified against the plaintiff on multiple occasions.

It was the court's proper function to weigh the evidence presented by both parties and to make findings of fact. See *Hoffer* v. *Swan Lake Assn., Inc.*, supra, 66 Conn. App. 861. "[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Greene* v. *Perry*, 62 Conn. App. 338, 343, 771 A.2d 196, cert. denied, 256 Conn. 917, 773 A.2d 943 (2001). The court was better able to determine issues of credibility because it observed the demeanor of witnesses, and we have but the dry record of their testimony. Sufficient evidence existed on which the court reasonably could have based its decision. We conclude that the court's finding that the plaintiff's use of the property was continuous and uninterrupted for at least fifteen years was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.