## ELIZABETH TODD *v.* BRETT GLINES ET AL.
## (14086)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued November 1, 1990—decision released January 1, 1991

1

*Daniel D. Skuret,* for the appellant-appellee (plaintiff).

*James E. O'Donnell,* with whom, on the brief, was *David J. McDonald,* for the appellees-appellants (defendants).

BORDEN, J. In this personal injury action, the sole issue on the plaintiff's appeal from the judgment of the trial court, after a jury trial, is whether the trial court improperly denied the plaintiff's motion to set aside the verdict and for a new trial based upon a claim of an inadequate verdict. On the cross appeal of the defendants, Brett Glines, Arthur Glines and Tnais Glines,the sole issue is whether the trial court properly ordered, pursuant to General Statutes (Rev. to 1987) § 52-225d (b) (3),[1] an award of attorney's fees to the

---

[1] General Statutes (Rev. to 1987) § 52-225d (b) (3) provided: "The court shall enter judgment in a lump sum for all past economic damages and past noneconomic damages. The court shall also enter judgment in a lump sum for all future economic damages and future noneconomic damages up to an aggregate of two hundred thousand dollars. The court shall also enter judgment in a lump sum for any litigation expenses for that portion of the attorney's fees related to past economic damages as determined by the court. Payment of that portion of the attorney's fees related to all remaining past noneconomic damages shall, at the discretion of the claimant, be payable in a lump sum or in periodic instalment payments as provided in subsection (d) of this section or in any combination thereof."

This section of the General Statutes was amended in 1987 to exclude the provision for an award of attorney's fees based upon a percentage of past economic damages. Public Acts 1987, No. 87-227, § 2.

plaintiff absent a specific request for such fees.[2] Pursuant to Practice Book § 4023 we transferred these appeals to this court, and we affirm the judgment of the trial court.

The jury found for the plaintiff and awarded her damages of $26,015.72, which was apportioned as $6115.72 for past economic damages, $7300 for future economic damages, $5100 for past noneconomic damages, and $7500 for future noneconomic damages. The jury also determined, however, that the plaintiff was 15 percent negligent, and reduced the award by that percentage for a verdict of $22,113.36. The plaintiff thereafter moved to set aside the verdict and for an additur which the court denied, finding that the verdict was "within the realm of fair and reasonable damages." The court, without hearing evidence on the issue, awarded attorney's fees to the plaintiff in the amount of $2038.57 based upon one third of the gross past economic damages found by the jury. The court later reduced this amount to $1732.79 pursuant to the defendant's request for a remittitur in order to reflect the reduction in the past economic damages by virtue of the 15 percent comparative negligence of the plaintiff. The appeal and cross appeal followed.

The jury could reasonably have found the following facts. On December 30, 1986, at approximately 6:50 p.m., the plaintiff was driving in a westerly direction and the defendant Brett Glines (Glines) was driving in

[2] The defendants also claimed on appeal that the trial court improperly awarded the attorney's fees pursuant to General Statutes (Rev. to 1987) § 52-225d (b) (3) because: (1) the section should not have been construed to authorize such an award; (2) the section is unconstitutionally vague; (3) the award of attorney's fees by the court violated the defendants' right to trial by jury; and (4) the award was arbitrary and capricious because it was made without factual findings. Since these claims were not raised in the trial court, we decline to consider them on appeal. *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 567–68, 525 A.2d 954 (1987); see also Practice Book § 4185.

an easterly direction on Route 42 in Beacon Falls. The
weather was snowy, and the roads were slippery and
unlit. As the plaintiff was proceeding down a hill, Glines
was coming around a curve. The plaintiff, although see-
ing that Glines had begun to slide into her lane after
applying his brakes, did not apply her brakes and the
two cars collided, contacting on the plaintiff's front left
grille and fender areas and on Glines' left front and
door areas. As a result of the collision, the plaintiff
suffered personal injuries.

There were two critical hotly disputed issues in the
case, namely, the issues of liability for the accident and
of the causal relationship between the accident and the
plaintiff's claimed injuries. With respect to liability, the
plaintiff testified that Glines was traveling at a speed
of thirty-five to forty miles per hour and that she was
traveling at a speed of five miles per hour. Glines tes-
tified, however, that he was traveling at a speed of ten
to fifteen miles per hour and that the plaintiff was
traveling at a speed of at least twenty-five miles per
hour. The plaintiff testified that Glines' car struck hers
three times, thereby spinning her car 360 degrees and
pushing it onto the shoulder of the oncoming lane before
she came to rest in her own lane of travel. Glines tes-
tified that his car contacted that of the plaintiff only
once on the front portion of her car, that she was not
spun around, and that in fact she continued to drive
up the road a short distance before stopping. The state
trooper who came to the scene testified, contrary to
the plaintiff's version, that from his examination of the
scene and of the physical evidence it did not appear that
the plaintiff's car had crossed the roadway and spun
around.

On the issue of the causal relationship between the
plaintiff's physical injuries and the accident, the medi-
cal testimony presented was also in sharp conflict. In
particular, the parties contested the issue of whether

the plaintiff's claim of injury to her right hip was a result of the accident in question, a result of a second accident in which the plaintiff was involved in September, 1987, or a result of the aging process. The plaintiff claimed that her hip was injured in the accident in question and, through her medical expert, that she suffered a 20 percent permanent partial disability. The defendants' medical expert testified that the plaintiff's hip pain was due to arthritis as a natural part of the aging process. Furthermore, on cross-examination of the plaintiff, the defendants brought out that according to the medical records the plaintiff did not complain about hip pain until after the date of the second accident, although she had been receiving treatment from an orthopedic doctor and a physical therapist for injuries to her neck and left scapula derived from the accident in issue. The plaintiff testified, however, that the subsequent accident merely aggravated the previous injury to her hip that was caused by the accident with Glines. The defendants, in addition to raising the issue of the second accident, also brought out on cross-examination that the plaintiff had fallen down a flight of stairs in November, 1987, sustaining a fracture of her right ankle.

On appeal, the plaintiff claims that the trial court improperly denied her motion to set aside the jury's verdict and for a new trial because the verdict was inadequate. We disagree.

" 'The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . .' " *Kubeck* v. *Foremost Foods Co.,* 179 Conn. 486, 487, 427 A.2d 391 (1980), quoting *Katsetos* v. *Nolan,* 170 Conn. 637, 656, 368 A.2d 172 (1976). " ' "The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether

the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." . . .' " (Citations omitted.) *Kubeck* v. *Foremost Foods Co.,* supra, quoting *Thomas* v. *Katz,* 171 Conn. 412, 416, 370 A.2d 978 (1976).

In this case, conflicting evidence was presented regarding the causal connection between the plaintiff's injuries and the accident in question. The plaintiff's testimony that her car was struck three times by that of Glines and spun around 360 degrees was refuted by the testimony of the state trooper, Glines, and other witnesses. Additionally, the testimony of the medical experts was sharply conflicting. The plaintiff's physician believed that her hip injury stemmed from the accident, while the defendants' expert disagreed, stating that the plaintiff's hip pain was the result of "a touch of arthritis in her weight-bearing joints." There was also evidence that the plaintiff had been involved in an automobile accident subsequent to the one in issue, and that she had also fallen down a flight of stairs and broken her ankle. In formulating its verdict, the jury could have concluded from this evidence that these later accidents were factors contributing to the plaintiff's disability that were not related to whatever injury the plaintiff sustained from her December, 1986 accident with Glines. Furthermore, the plaintiff's version of liability was disputed by other testimony and by the physical evidence. This could have undermined her credibility in the jury's eyes, and that diminished credibility may well have carried over to the plaintiff's testimony about the extent of her injuries.

"The resolution of these issues [of conflicting evidence] is properly within the province of the jury who determine[s] the credibility of the witnesses and the weight to be accorded their testimony . . . and it is [its] function to determine the damages suffered by the

plaintiff." (Citations omitted.) *Kubeck* v. *Foremost Foods Co.*, supra, 487. In formulating its verdict on liability and in determining damages, the jury was entitled to take into account the discrepancies in the testimony concerning the accident and the cause of the plaintiff's hip injury. Merely because the plaintiff asserts that she should have been awarded a larger sum for past and future noneconomic damages does not justify setting aside the verdict. The fact that the jury's award was lower than the plaintiff expected may merely reflect the jury's evaluation of the credibility of the witnesses and the evidence presented. Id. Furthermore, " ' "[t]he fact that both the court and the jury concurred in their determination is a persuasive argument for sustaining the action of the court on the motion [to set aside the verdict]." ' " Id., 487–88; see also *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 343, 430 A.2d 1 (1980).

Clearly, this was a case where the issues of causation and liability were far from clear. In light of the conflicting evidence presented to the jury and the jury's award that provided past and future economic damages as well as past and future noneconomic damages, we do not conclude that this is a case where " ' " 'the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality.' " ' " *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 207, 579 A.2d 69 (1990), quoting *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555, 562 A.2d 1100 (1989). " 'Assessment of damages is peculiarly within the province of the jury . . .' "; *Fox* v. *Mason*, 189 Conn. 484, 489, 456 A.2d 1196 (1983); and, due to the contested circumstances surrounding this case, "we are unable to conclude that the verdict falls outside 'the necessarily flexible limits of fair and

reasonable compensation . . . .' " Id., quoting *Vandersluis* v. *Weil*, 176 Conn. 353, 358, 407 A.2d 982 (1978).

We next address the merits of the defendants' cross appeal. The defendants claim that, absent a demand for them in the pleadings, the trial court improperly awarded the plaintiff attorney's fees based on a percentage of the award of past economic damages pursuant to General Statutes (Rev. to 1987) § 52-225d (b) (3). We are unpersuaded.

At its roots, the defendants' argument is that § 52-225d (b) (3) does not obviate a need for specifically requesting an award of attorney's fees in the party's pleadings. A review of the language and purpose of the statute, together with reference to general and specific requirements of pleading, however, dispel this claim.

Section 52-225d (b) (3) provides in relevant part that "[t]he court *shall* also enter judgment in a lump sum for any litigation expenses for that portion of the attorney's fees related to past economic damages as determined by the court." (Emphasis added.) We conclude that the legislature intended this statute to provide an award of fees even in the absence of a specific demand for them in the pleadings, because the statute is mandatory and, therefore, no valid purpose would be served by hinging its application to a pleading requirement.

The statute provides that the court *shall* award attorney's fees based upon the amount of past economic damages. The legislature's use of the word "shall" generally evidences an intent that the statute be interpreted as mandatory. *LeConche* v. *Elligers*, 215 Conn. 701, 710, 579 A.2d 1 (1990); *Farricielli* v. *Personnel Appeal Board*, 186 Conn. 198, 203, 440 A.2d 286 (1982). "The test for determining whether the use of the word 'shall' is mandatory or directory is 'whether the prescribed mode of action is of the essence of the thing

to be accomplished.' *Vartuli* v. *Sotire,* 192 Conn. 353, 360, 472 A.2d 336 (1984). That test must be applied with reference to the purpose of the statute." *LeConche* v. *Elligers,* supra.

The purpose of that part of § 52-225d (b) (3) at issue here is to increase the plaintiff's net damage award by shifting to the defendants a portion of the plaintiff's litigation costs, namely, that part of the plaintiff's attorney's fees attributable to the award for past economic damages. The prescribed mode of action, the awarding of the fees, is necessarily the "essence" of the provision. Furthermore, in the very next sentence of § 52-225d (b) (3) the legislature made the method of payment of such fees—in a lump sum, periodic installments, or a combination thereof—subject to "the *discretion* of the claimant . . . ." (Emphasis added.) Thus, the difference in legislative language strongly suggests that although the method of payment of attorney's fees is discretionary with the claimant, the award of such fees by the court is mandatory.

We turn then to the issue of whether there is, nonetheless, a pleading requirement that the plaintiff have requested such fees in her complaint in order for the court to have awarded them. The defendants' claim, although not expressly set forth in their brief, is rooted in two bases, namely, general case law holding that such a request be specifically pleaded and a specific Practice Book provision requiring that a claimant set forth the number of the statute pursuant to which he is making a claim.

It is generally true, as the defendants argue, that the allegations of the complaint provide the measure of recovery, and that the judgment cannot exceed the claims pleaded, including the prayer for relief. *Brill* v. *Ulrey,* 159 Conn. 371, 374, 269 A.2d 262 (1970). These requirements, however, are based on the principle "that

a pleading must provide adequate notice of the facts claimed and the issues to be tried." *Tedesco* v. *Stamford,* 215 Conn. 450, 459, 576 A.2d 1273 (1990). The fundamental purpose of these pleading requirements is to prevent surprise of the defendant. Id. The purpose of these general pleading requirements is consistent with the notion that the purpose of specific pleading requirements, such as Practice Book § 109A (a),[3] is to promote "the identification, narrowing and resolution of issues before the court." *Rowe* v. *Godou,* 12 Conn. App. 538, 544, 532 A.2d 978 (1987), rev'd, 209 Conn. 273, 550 A.2d 1073 (1988).

In examining the principles of law supporting general pleading requirements, the Appellate Session of the Superior Court held that a party must specifically allege a request for attorney's fees in order to be awarded such fees as part of an award of damages. See *Bushnell Plaza Development Corporation* v. *Fazzano,* 38 Conn. Sup. 683, 688, 460 A.2d 1311 (1983); *Santini* v. *Kocher,* 38 Conn. Sup. 506, 508, 452 A.2d 318 (1982). Assuming, without deciding, that these two Appellate Session cases accurately reflect the current state of our pleading requirements; but see, e.g., *LeConche* v. *Elligers,* supra, 716 (pleadings to be read broadly and realistically, not narrowly and technically); we are persuaded that, in light of the purpose behind § 52-225d (b) (3), they do not apply to this case.

In addition to such general pleading requirements, Practice Book § 109A (a) more specifically sets forth a pleading requirement for parties asserting a claim pursuant to a statute. Section 109A (a) provides that "[w]hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically

---

[3] Practice Book § 109A (a) provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number.

identified by its number." Although, as we have said, "shall" is often mandatory; *LeConche* v. *Elligers,* supra; this court, in *Rowe* v. *Godou,* supra, 209 Conn. 275, agreed with the reasoning and result reached by the Appellate Court in *Rowe* v. *Godou,* supra, 12 Conn. App. 542, that "the requirement of Practice Book § 109A is directory, rather than mandatory." As with general pleading requirements, the purpose underlying § 109A (a) is to "promot[e] the often expressed judicial policy of full, informative, comprehensive and open disclosure of legal claims, which promotes the identification, narrowing and resolution of issues before the court." Id., 543–44.

Although the plaintiff did not request attorney's fees in her pleadings, she did make a general claim for "money damages" in her prayer for relief. Under the facts of this case and the particular nature of this award of fees, this form of pleading is not fatal to such an award. The attorney's fees at issue here are derived solely from the portion of the award attributable to past economic damages, and their purpose is to increase the plaintiff's net recovery of those damages. Thus, the fees may fairly be regarded, for purposes of the prayer for relief, as inextricably intertwined with those damages.

Moreover, this is not a case in which the specification of the particular fees awarded would have aided the identification, narrowing and resolution of issues. Rather, the trial court was mandated by § 52-225d (b) (3) to award the attorney's fees in question based upon the past economic damages awarded by the jury. Furthermore, the defendants cannot fairly be regarded as having been disadvantaged or surprised by the plaintiff's failure to request such fees because they were automatically triggered by a verdict for the plaintiff. Thus, they were a factor that the defendants could not have affected, whether or not the plaintiff's complaint spe-

cifically claimed them. We conclude, therefore, that the award of fees was proper in this case despite the absence of a specific request for them in the plaintiff's pleadings.

The judgment is affirmed.

In this opinion the other justices concurred.