[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This litigation concerns the claim of the plaintiff, a precast concrete manufacturer and erector against the defendant, general contractor, for the retainage due under a contract relating to work on a UPS distribution facility in Watertown, Connecticut.
The plaintiffs were obligated under the contract (Exhibit #9) to provide and erect the precast concrete wall for the project. The precast slabs were supported by a masonry wall. The contract price was $328,000, of which the retainage $32,800 is at issue.
In addition to its contract claim that plaintiff alternatively seeks $32,800 as the reasonable value of its work on the project. CT Page 614
Defendant has withheld the retainage because of its claim that plaintiff failed to provide shims and/or grouting for the proper erection of the precast panels; failed to provide required warranty for its workmanship and materials and failed to remedy a "spalling" of the panels resulting from a failure to grout the panels. The defendants seek to offset plaintiff's claim with a $26,232.80 backcharge for its costs in having the panels grouted; and the balance of the retainage on the claim of the failure to provide the warranty.
The dispute arose out of a disagreement as to what were plaintiff's obligations under the contract. Specifically whether, plaintiff was obligated to provide grouting in the erection of the precast concrete walls.
Plaintiff's position is that it specifically excluded from its contract "Grouting and shims (except as required for proper erection)" Exhibit #9 Section 2 Exclusions. Defendant contends that notwithstanding such language of exclusion, the plaintiff was obligated to perform such grouting work as was necessary to insure the support of its precast concrete panels.
The panels provided by the plaintiff were large concrete panels manufactured or precast by plaintiff; and delivered to the construction site. (Exhibits 1-7, 10 and 11). These panels may be structural in nature spanning from columns and load bearing. An alternative use may be non-load bearing, with no spanning or structural role for the panels. In this project, the panels were designed to be non-load bearing, with support from below. The panels would rest on each other with the load carried down to a concrete masonry wall.
In stacking the panels in a wall, the pieces are kept uniformly apart by the use of shims (plastic devices which would separate the panels). The shims would only serve to keep the panels apart so that grout could be added in the space to permanently set the panels. Continuous bearing between and among the panels was necessary for the vertical support of the system upon the underlying concrete masonry wall.
It is the grout, which was necessarily added to complete the precast concrete walls, that brings about this litigation.
The plaintiff claims that as a result of a "value engineering" process involving representatives of plaintiff and defendant; the project requirements were changed to reduce costs while accomplishing the major objectives of the building design. Among these charges was the support system and type of panels, and the assumption of the responsibility for grouting by the defendant CT Page 615 as general contractor.
The defendant maintained that it relied on plaintiff as an expert on precast concrete walls to propose, design and engineer a complete system, which did not require completion by others. The defendant relies on the obligations of plaintiff under their contract (Exhibit #9):
 "Section 1. The subcontractor agrees to furnish all materials and perform all work as described in Section 2 hereof. . .all in accordance with the General Contractor, plans and specifications, . . . The subcontractor agrees to be bound to the contractor by the terms of the hereinabove described General Contract, plans specifications and to assume to the contractor all the obligations and responsibilities of the contractor by those documents, assumes to the owner, except to the extent that provisions contained therein are excluded or modified by this contract or are by law applicable only to the contractor."
 Section II. The subcontractor agrees to furnish the following materials and to do the following work: Furnish all labor, materials and equipment necessary to furnish and erect all architectural precast wall panels and to furnish F.O.B. job site all precast prestressed hollow slab units, all in accordance with the contract documents as listed in Rider A, copy attached; more specifically described within, but not necessarily limited to specifications Sections 03451 and 03420.
The defendant's vice president in charge of the project and project superintendent did not know that they were obligated to have the exterior spaces between precast slabs grouted until a "spalling" problem developed with the panels. "Spalling" is a flaking off or chipping off of a portion of the precast panels.
The defendant had only performed caulking of the walls and didn't grout until it was advised that it was necessary by plaintiff (Exhibits 21 and 22). CT Page 616
The grouting accomplished by defendant remedied the problems with "spalling".
In support of its contention that it excluded any obligation for such grouting, the plaintiff cites: the express language of exclusion; the allowance for exclusions in Section 1 of the contract; shop drawings (Exhibits 17 and 18) notes and testimony of Mr. Palmbaum and Mr. Nelson.
The language of exclusion "Grout and shims (except as required for erection)" are set forth in Section 2 of Exhibit 9, the parties contract.
The shop drawings (Exhibits 17 and 18) describe the panel installation and note "Dry-pack (By Others) shim as required for erection" and "Connection to Col (By Others)". Testimony of Mr. Palmbaum established that grout was similar to "Dry-Pack" and that "Col" referred to column. The erection procedure described in the shop drawings was reviewed and approved by the defendant and project architect.
Mr. Nelson, an engineer, was retained by plaintiff pursuant to the contract (Exhibit 9) to provide engineering services related to the walls for the projects (Exhibit 15). Mr. Nelson prepared and submitted to the defendant and project architect calculations. These calculations included a reference to "continuous Grout or Dry-Pack for Bearing Use; (2) 4" x 4" x 1" +/- Plastic Shims Per Panel for Erection" (Exhibit 16 sheet 29).
Mr. Palmbaum introduced pre-bid negotiation notes (Exhibits 8 page 13) which included references to "no grout" and "vertical load is supported by the CMU walls", checked to reflect discussions in meeting with the defendants representatives on July 31, 1986. The plaintiff then submitted bids for the present panels with the grout exclusion; while a separate bid for another aspect of the project specifically included grout (Exhibit 28).
Mr. Palmbaum testified as to defendants solicitation of "value engineering" and a reduced bid price; which resulted in revisions and the grout exclusion. He further testified that grout was not necessary for erection, but was required at a subsequent time.
Mr. Nelson testified that grout was not necessary for the erection of the precast panels, but was required for preserving the system for its life or service.
The court finds that the plaintiff has sustained its burden of proving that it never contracted to furnish the "grouting" which was required for the life or service of the precast system. CT Page 617
The court in view of the defendant's evidence as to its ignorance as to the requirement of grouting, must determine whether there was in fact a meeting of the minds which created a contract, or a mutual mistake which would justify revision of the contract.
In order to justify rescission of a contract on the ground of mutual mistake, the mistake must be common to both parties. Buol Machine Co. v. Buckens, 146 Conn. 639, 641 (1959); State v. Hartford Accident Indemnity Co., 138 Conn. 334, 340 (1952); Milford Yacht Realty Co. v. Milford Yacht Club, Inc., 136 Conn. 544,548 (1950); see 3 Corbin, Contracts Section 600, 605; 12 Am.Jur. 618-621.
The mistake was that of the defendant in failing to appreciate the consequence of the exclusion. The court finds that the plaintiff specifically bargained for the exclusion. The consequences of such omission were clearly indicated by the shop drawings and Mr. Nelsons' calculations.
The court further finds that defendant and its representatives are experienced general contractors familiar with all phases of construction and contract negotiations.
The position of the plaintiff that grouting was not necessary for the erection of the walls was substantiated by the testimony of Mr. Nelson, an engineer.
The plaintiff was not obligated to perform grouting as a condition of its contract with defendant (Exhibit #9); thus, the set off for grouting costs by defendant was improper.
The defendant has also asserted that it was not required to pay plaintiff the retainage under the contract, because of the failure of plaintiff to provide the required warranty. The court finds that plaintiff has proven that it provided the required warranty (Exhibits 24 and 27). Accordingly, plaintiff is entitled to the full retainage due on the contract.
The plaintiff is also seeking statutory interest and attorneys fees pursuant to the contract. The parties agreement provided (Exhibit #9) in section 10:
 "Any expense incurred by the contractor as herein provided, either for the furnishing of materials or finishing the work, and any damage incurred through such default shall be chargeable to the subcontractor, CT Page 618 including any and all costs for legal fees to enforce the terms of this contract, and vice versa."
The defendant contests any award of attorneys fees on the basis that they were not pleaded or support by evidence as to the amount of fee to be awarded.
The general rule is that the allegations of the complaint provide the measure of recovery, and the judgment cannot exceed the claims pleaded, including the prayer for relief. Brill v. Ubrey, 159 Conn. 371, 374, 269 A.2d 262 (1970).
 The plaintiffs' prayer for relief reads: Wherefore the plaintiff claims: 1. Money damages. 2. Such interest, fees and costs as may be provided by law. 3. Such other relief as the court deems equitable and just.
Attorneys fees are not in the circumstances of this contract claim available as a matter of either equity or statutory law. The entitlement to attorneys fees rests entirely on the contractual provision.
Our Supreme Court has recently determined that where attorneys fees are specifically mandated by statute, they need not appear in the prayer for relief, in order to be awarded. Todd v. Glines, 217 Conn. 1, 12 (1991).
The Appellate Session of the Superior Court in two cases dealing with general pleading requirements has held that a specific request for attorneys fees was necessary for such fees to be part of an award of damages. Bushnell Plaza Development Corporation v. Trozzanio, 38 Conn. Sup. 683, 688, 460 A.2d 1311
(1983); Santini v. Kocher, 38 Conn. Sup. 506, 508, 452 A.2d 318
(1982). The Supreme Court in dicta in Todd v. Glines,217 Conn. at 10, without affirming or overruling such decisions contrasts their holdings to LeConche v. Elligers, 215 Conn. 701, 716 (1990) (pleadings to be read broadly and realistically, not narrowly and technically.)
The pleadings in the instant case contain a claim for fees, though not directed to the contractual basis.
The court finds that a broad reading of the pleadings as directed by LeConche v. Elligers entitles the plaintiff to pursue its claim for attorneys fees.
Judgment enters for the plaintiff in the amount of $32,800, with statutory interest on this liquidated sum from August 30, CT Page 619 1987. The latest date upon which plaintiff would have been entitled to full payment would have been 30 days from its resolution of the warranty issue (see Exhibit 27 dated July 24, 1987).
The plaintiff is further awarded attorneys fees in an amount to be determined at a subsequent hearing. Plaintiff to provide an affidavit in support of its fee petition, substantiated by contemporaneous time records, within two weeks of this judgment.
McWEENY, J.