MOTTOLESE, J.
 

 This is an action for adverse possession. The property involved is a “paper street,” that is, the property was once dedicated to the city of Norwalk for use as a public highway but was never actually developed or used as such. The subject property, designated Seldon Street, abuts the property where the plaintiffs reside at 5 Brayboume Drive in Norwalk.
 

 The plaintiffs brought the present action in 1993 pursuant to General Statutes § 47-31. The plaintiffs have named as defendants Michael Matteo, Harold and Anna Keyes, George and Chariklia Papadopoulos, Rita
 
 *192
 
 Steinberger as administratrix of the estate of Elizabeth Boland, Rita Steinberger as conservator of the estate of William Boland and Rita Steinberger, individually. The present action was tried to conclusion on June 16, 1994.
 

 The present action is the plaintiffs’ second attempt to establish ownership of Seldon Street. On May 15, 1991, the plaintiffs filed an action, also pursuant to § 47-31, alleging title to Seldon Street by deed
 
 (Lewis
 
 v.
 
 Matthews,
 
 Superior Court, judicial district of Stamford Norwalk at Stamford, Docket No. CV910116978S [February 2, 1993]) (prior action). The plaintiffs based their prior claim to Seldon Street on language in the 1973 warranty deed through which the plaintiffs acquired their property (Braybourne Drive property). The deed also purported to convey title to Seldon Street. All the defendants in the present action were named as defendants in the prior action. In addition, the plaintiffs named the city of Norwalk as a defendant. The prior action was tried to conclusion in 1992 before an attorney trial referee and judgment on the report was entered by the court on February 2, 1993, in response to the plaintiffs’ motion for judgment. No appeal was taken.
 

 In the prior action, the plaintiffs’ complaint did not allege adverse possession and the plaintiffs asserted repeatedly that they were not making any such claim. The court has reviewed the record of the prior action exhaustively, however, including the audiotape of the trial, and that record indicates that disputes concerning adverse possession arose repeatedly.
 
 [1]
 
 In fact, on numerous occasions during the trial, the plaintiffs attempted, more or less unsuccessfully, to inject the issue into the case.
 

 
 *193
 
 The plaintiffs persisted in their efforts in their post-trial memorandum. The following from that memorandum is material. “Where a party seeks to quiet title pursuant to . . . § 47-31, the trial court should first determine in which party record title lies, and then determine whether adverse possession has divested the record owner of title.
 
 Clark
 
 v.
 
 Drska,
 
 1 Conn. App. 481, 473 A.2d 325 (1984).
 

 .“Although this is a quiet title action, it is necessary to discuss the elements of adverse possession, including the 15-year time requirement, since defendants Boland and Steinberger claim they have an implied easement over the property claimed here by the plaintiffs, and defendants Boland, Steinberger, and Matteo each claim an interest in all land to the middle of the discontinued Seldon Street . . . contained within the area claimed here by the plaintiffs.
 

 “For
 
 19 years,
 
 the plaintiffs’ deed has been on record giving notice to the defendants that plaintiffs have title and interest to the entire width of Seldon Street adjacent to lot 5 [plaintiffs’ Braybourne Drive property]. Plaintiffs voluntarily relinquished part of that interest by erecting and/or maintaining their fence in such a way as to give the owners of Tax Lot 11, at this time the defendants Boland and Steinberger, access to and from Seldon Street and, thus, to Naples Avenue.
 

 “For
 
 19 years,
 
 the plaintiffs’ actual possession, occupancy, dominion, and control of the entire width of Seldon Street adjacent to Lot 5 has been open and adverse to the claims of ownership belatedly raised by the defendants only in response to the filing of this action in 1991.
 

 “From 1929, the enactment date of zoning laws, until the present date, the owners of Tax Lot 11 have had a valid building lot located in a C Residence Zone pursuant to the Building Zone Regulations in the City of
 
 *194
 
 Norwalk. At all times between 1973 and the present date, the owners of Tax Lot 11 have had the opportunity to challenge the plaintiffs’ act of possession, occupancy, and control of the entire width of Seldon Street adjacent to Lot 5 and at all times until the date of this action, the owners of Tax Lot 11 have failed to do so. If the plaintiffs axe successful on the claims of this action, the xesult will have no impact on the validity of Tax Lot 11 as a building lot either as to size or access to a public highway.” (Emphasis in original.)
 

 The attorney trial referee made the following pertinent findings and conclusions. The attorney trial referee found that Seldon Street, although at one time dedicated to the city of Norwalk for public use, “was never constructed nor accepted as a public highway of said city, and is a private way.” The attorney trial referee further found, however, that a cottage located on the plaintiffs’ Brayboume Drive property encroached six feet into Seldon Street. The attorney trial referee then went on to conclude that “the evidence offered and the findings do show that the dwelling which encroaches into Seldon Street by six feet . . . was constructed in the 1940s after World War II and existed in said location in 1973 when the plaintiffs received title [to the Brayboume Drive property]. Said building location, and the interference with any travel way in Seldon Street, had resulted in the ouster of use by anyone owning the private way or having right to use same. One can adversely possess against the owner of an easement.”
 
 [2]
 
 (Citation omitted.)
 

 On the basis of those findings, the attorney trial referee recommended that “judgment on the complaint
 
 *195
 
 enter for the plaintiffs as to the land lying beneath the area of the building which encroaches six feet into Seldon Street and for the defendants on the remainder of the claimed land.” Id. The attorney trial referee reached the foregoing conclusion and recommended the foregoing judgment despite his express finding that the “[pjlaintiffs [did] not claim title by adverse possession.” See footnote 1 of this opinion.
 

 The defendants have raised the special defense of res judicata in the present action based on the judgment in the prior action. At the conclusion of trial in the present action, the court ordered the plaintiffs and the defendants to submit posttrial briefs discussing the res judicata effect of the prior judgment. It is that question that the court must now address.
 

 The doctrine generally referred to as res judicata encompasses two more specific doctrines: (1) merger, or claim preclusion; and (2) collateral estoppel, or issue preclusion. “The subtle distinction between claim preclusion and issue preclusion has been so described: ‘[C]laim preclusion prevents a litigant from reasserting a
 
 claim
 
 that has already been decided on the merits.’ ” (Emphasis added.)
 
 Scalzo
 
 v.
 
 Danbury,
 
 224 Conn. 124, 127-28, 617 A.2d 440 (1992), quoting
 
 Virgo
 
 v.
 
 Lyons,
 
 209 Conn. 497, 501, 551 A.2d 1243 (1988);
 
 Gionfriddo
 
 v.
 
 Gartenhaus Cafe,
 
 15 Conn. App. 392, 401-402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989). “In contrast, issue preclusion, is that aspect of res judicata which prohibits the relitigation of an
 
 issue
 
 when that issue was actually litigated and necessarily determined in a prior action . . . .” (Emphasis added; internal quotation marks omitted.)
 
 Scalzo
 
 v.
 
 Danbury,
 
 supra, 128, quoting
 
 Carothers
 
 v.
 
 Capozziello,
 
 215 Conn. 82, 94-95, 574 A.2d 1268 (1990);
 
 In re Juvenile Appeal (83-DE),
 
 190 Conn. 310, 316, 460 A.2d 1277 (1983). Thus, these two doctrines are differentiated primarily by their
 
 *196
 
 breadth.
 
 Scalzo
 
 v.
 
 Danbury,
 
 supra, 127. The issue preclusion doctrine applies to factual issues, i.e., elements or components of a claim. Under the issue preclusion— or collateral estoppel — doctrine, a party is estopped from relitigating such elements. Claim preclusion applies more broadly to claims in their entirety; claim preclusion prohibits a party from bringing more than one action based on the same claim. Under the claim preclusion — or merger — doctrine, all claims in one action are said to “merge” into the judgment and are extinguished. 1 Restatement (Second), Judgments § 18 (1), comment (a)
 
 (1982); Duhaime v. American Reserve Life Ins. Co.,
 
 200 Conn. 360, 364, 511 A.2d 333 (1986).
 

 According to the foregoing principles, the court finds that the present action presents no question of collateral estoppel or issue preclusion. The plaintiffs are not attempting to relitigate any factual elements of adverse possession that were already litigated in the prior action. In fact, the defendants have expressly limited their special defense to claim preclusion and distinguished the doctrine of issue preclusion. Thus, the plaintiffs’ analysis of and reliance on issue preclusion is misplaced.
 
 [3]
 
 The issue in the present action is whether the plaintiffs’ present claim of adverse possession was, under the doctrine of claim preclusion, part of the claim that was merged into and extinguished by the judgment in the prior action.
 

 Initially, the court recognizes that a prior judgment has res judicata effect only as to the parties to the original action and their privies.
 
 Commissioner of Environmental Protection
 
 v.
 
 Connecticut Building Wrecking Co.,
 
 227 Conn. 175,188, 629 A.2d 1116 (1993);
 
 Wade’s Dairy, Inc.
 
 v.
 
 Fairfield,
 
 181 Conn. 556, 559, 436
 
 *197
 
 A.2d 24 (1980). The present action presents no question of privity, however, since the plaintiffs and the defendants are the same in both the present and the prior actions.
 

 Connecticut follows the Restatement (Second) of Judgments regarding the doctrine of merger or claim preclusion. Section 18 (1) of the Restatement (Second) provides that “[w]hen a valid and final personal judgment is rendered in favor of the plaintiff: (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . .” Comment (a) to that section further provides that “[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiffs original claim is said to be ‘merged’ into the judgment.” 1 Restatement (Second), supra, § 18;
 
 Duhaime
 
 v.
 
 American Reserve Life Ins. Co.,
 
 supra, 200 Conn. 364;
 
 Vakalis
 
 v.
 
 Kagan,
 
 18 Conn. App. 363, 366, 557 A.2d 1285 (1989);
 
 Lehto
 
 v.
 
 Sproul,
 
 9 Conn. App. 441, 444, 519 A.2d 1214 (1987).
 

 The merger doctrine not only prohibits a second action based on claims actually raised and adjudicated in a prior action, merger also prohibits “the pursuit of any claims relating to the cause of action which . . .
 
 might have been made.
 
 ” (Emphasis added; internal quotation marks omitted.)
 
 Commissioner of Environmental Protection
 
 v.
 
 Connecticut Building Wrecking Co.,
 
 supra, 227 Conn. 188. Our Supreme Court has adopted the transactional test of the Restatement (Second) of Judgments to determine whether a claim “might have been made” in a prior action. Id. According to this test, the claim extinguished by a judgment in a prior action “includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of
 
 *198
 
 which the [first] action arose.” (Internal quotation marks omitted.) Id., 189-90; 1 Restatement (Second), supra, § 24.
 

 Under the transactional test, a claim includes more than just legal theory. The claim is coterminous with the factual transaction supporting the theory, “regardless of the number of substantive theories . . . that may be available to the plaintiff’ based on the same transaction. 1 Restatement (Second), supra, § 24. Thus, although a plaintiff might choose to raise only a single theory, judgment on that theory extinguishes that plaintiffs entire claim, which includes all other theories arising out of the same transaction or series of transactions.
 

 “What factual grouping constitutes a ‘transaction’, and what groupings constitute a ‘series’, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit . ...” 1 Restatement (Second), supra, § 24. “The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action ... to present evidence or grounds or theories of the case not presented in the first action . . . .” 1 Restatement (Second), supra, § 25;
 
 Commissioner of Environmental Protection
 
 v.
 
 Connecticut Building Wrecking Co.,
 
 supra, 227 Conn. 190.
 

 While the record in the prior action is ambiguous, the court cannot escape the conclusion that the plaintiffs actually raised claims of adverse possession in that proceeding. The record indicates that throughout the prior action, the plaintiffs consistently protested that they were not claiming adverse possession. As already noted, the plaintiffs did not plead adverse possession in their complaint. The attorney trial referee expressly found that the plaintiffs made no such claim. Yet, to
 
 *199
 
 establish that the city of Norwalk and the other defendants had abandoned their rights in Seldon Street, the plaintiffs presented evidence that would have supported a claim of adverse possession. The plaintiffs offered evidence of their use of and improvements upon Seldon Street, that their use had lasted beyond fifteen years, that it had been exclusive, and that it had been open and hostile as evidenced by a document Lewis recorded on the land records of the city of Norwalk.
 

 In their posttrial memorandum in the prior action, the plaintiffs expressly asserted and argued adverse possession based on this evidence. The plaintiffs stated that “[although this is a quiet title action, it is necessary to refer to the elements of adverse possession . . . .” In a two page discussion of adverse possession, the plaintiffs argued further that “[f]or
 
 19 years,
 
 the plaintiffs’ actual possession, occupancy, dominion, and control of the entire width of Seldon Street . . . has been open and adverse to the claims of . . . the defendants . . . .” (Emphasis in original.) The defendants also devoted significant portions of their posttrial memoranda to adverse possession. Finally, the judgment the plaintiffs obtained was, according to the attorney trial referee’s recommendation, based solely upon adverse possession. The plaintiffs moved for judgment upon the attorney trial referee’s recommendation without filing objections and have accepted the benefit of the judgment.
 

 Given the foregoing, the court cannot discern how the plaintiffs can assert that “the issues of ouster and adverse possession were neither . . . argued nor decided in the prior action”; that “no evidence [was] presented as to ouster and adverse possession”; or that the attorney trial referee “had no grounds to and, in fact, did not, decide whether or not the elements of ouster and adverse possession had been proved . . . .”
 
 *200
 
 All that supports this assertion is the plaintiffs’ repeatedly saying they were not claiming adverse possession. The record of the prior action plainly reveals that the plaintiffs presented evidence that would support adverse possession. They argued adverse possession in their posttrial memorandum and they obtained a judgment granting them relief solely on that basis. The court cannot disregard the record in favor of the plaintiffs’ unsupported contrary assertions that they made no claim of adverse possession. “[A] person cannot try a case through withholding, or even negligently failing to raise, a vital claim, and subsequently, after an adverse judgment, institute a new action to try out that claim.”
 
 Ribeiro
 
 v.
 
 Andover,
 
 19 Conn. Sup. 438, 443, 116 A.2d 769 (1955).
 

 The court, therefore, finds that the plaintiffs actually raised their present claim of adverse possession in the prior action. Under the doctrine of claim preclusion, the plaintiffs cannot recover upon the same claim in the present action.
 

 The plaintiffs suggest that the attorney trial referee, in recommending judgment based upon adverse possession, expanded the proper scope of the prior action sua sponte. The court recognizes that the plaintiffs did not allege adverse possession in their prior complaint, and that generally “the allegations of the complaint provide the measure of recovery, and that the judgment cannot exceed the claims pleaded . . . .”
 
 Todd
 
 v.
 
 Glines,
 
 217 Conn. 1, 9-10, 583 A.2d 1287 (1991);
 
 Brill
 
 v.
 
 Ulrey,
 
 159 Conn. 371, 374, 269 A.2d 262 (1970). The judgment in the prior action, however, is in no way deficient under
 
 Todd.
 

 The rationale for the principle announced in
 
 Todd
 
 is to ensure that the defendants receive adequate notice of the claims against them and to avoid surprise. The rule is not applied strictly where this purpose is not implicated.
 
 Todd
 
 v.
 
 Glines,
 
 supra, 217 Conn. 10-11. It
 
 *201
 
 is not implicated in the present action. The defendants were apparently so sure that the plaintiffs would raise adverse possession that, even though the plaintiffs did not plead it, the defendants nonetheless filed special defenses as though adverse possession had been pleaded. See, e.g., fourth special defense of Rita Steinberger et al., dated June 16, 1992; first special defense of Michael Matteo, dated July 23, 1991; special defense of the city of Norwalk, dated July 31, 1991.
 

 Furthermore, as discussed previously, the plaintiffs specifically alleged facts that supported the attorney trial referee’s recommendation based on adverse possession.
 
 New Haven
 
 v.
 
 Mason,
 
 17 Conn. App. 92, 96-97, 550 A.2d 18 (1988). In fact, the plaintiffs argued adverse possession based on these facts in their posttrial memorandum. Thus, while the attorney trial referee’s recommendation may have exceeded the claim pleaded, it did not exceed the claims that the plaintiffs presented.
 

 Finally, as required by § 47-31, the attorney trial referee “affirmatively adjudicated the title claims of the [parties].”
 
 Marquis
 
 v.
 
 Drost,
 
 155 Conn. 327, 231 A.2d 527 (1967). The attorney trial referee’s report clearly recommends a judgment establishing the plaintiffs as the owners of that portion of Seldon Street “lying beneath the area of the building which encroaches six feet into Seldon Street and for the defendants on the remainder of the claimed land.” The judgment that entered accordingly is, therefore, not overreaching or otherwise deficient.
 

 Even assuming the plaintiffs had not actually raised their adverse possession claim in the prior action, the question remains as to whether the plaintiffs’ claim of adverse possession
 
 might have been made.
 
 According to the foregoing principles, the court must, therefore, determine whether the transaction (or series of transactions) that was the basis for the plaintiffs’ prior theory of
 
 *202
 
 title by deed is also the basis for the adverse possession theory the plaintiffs assert in the present action.
 

 The plaintiffs’ theory of title by deed would, at first glance, appear to be based on a transaction, i.e., a conveyance, separate from the plaintiffs’ adverse possession theory. The record of the prior action makes clear, however, that the plaintiffs’ success on the theory of title by deed depended upon the attorney trial referee’s (and thus the court’s) making two corollary determinations. First, the attorney trial referee had to find that the city of Norwalk, the putative owner of Seldon Street, had abandoned the street. Second, the attorney trial referee had to find that none of the other defendants had a right-of-way in Seldon Street. The plaintiffs acknowledged that these determinations were required “[i]n order for judgment to enter for the plaintiffs . . . .” These corollary issues were in fact decided by the attorney trial referee and were part of the basis for the court’s judgment in the prior action.
 

 The facts underlying these corollary issues, the plaintiffs’ primary theory of title by deed, and their present theory of adverse possession are clearly a “factual grouping” constituting a series of transactions for purposes of claim preclusion. To prove their theory of title by deed, the plaintiffs were required to establish that their grantors owned the interest they purported to convey. In attempting to do so, the plaintiffs offered evidence that they had used and improved the Seldon Street property and otherwise “continued the use, possession, occupancy and control over that portion of the property” that the plaintiffs’ grantors purported to convey. These facts, although presented to support the title by deed theory, clearly also support the theory of adverse possession. In fact, these facts were later argued in support of that theory in the plaintiffs’ post-trial memorandum. These same facts were again presented to establish adverse possession during the trial
 
 *203
 
 of the present action. Thus, these facts are not only related in time, space, origin, and motivation to those facts that the plaintiffs proved at the adverse possession trial, they are to a large extent the same facts. In attempting to establish title to Seldon Street by deed in the prior action, the plaintiffs relied upon the same transaction upon which they now rely, at least in part, to establish adverse possession in the present action. Applying the transactional test, therefore, the plaintiffs’ theory of adverse possession might properly have been raised in the prior action.
 

 The plaintiffs also sought to prove, in the prior action, that the city of Norwalk had abandoned Seldon Street. As previously discussed, the success of their theory of title by deed depended on their doing so. The plaintiffs attempted to prove abandonment in the prior action through evidence of essentially the same facts upon which their present claim of adverse possession depends, for example, the plaintiffs’ fencing, rototilling, and building a garden on the Seldon Street property and the plaintiffs’ recording a notice of hostile possession on the Norwalk land records. Several times during the trial, the defendants’ attorneys objected to such evidence on the ground that it was relevant only to adverse possession. The response of the plaintiffs’ attorney was that while such evidence could go to adverse possession, it also went to the issue of the city’s abandonment. This response acknowledges that both theories are based upon the same facts. Thus, while the plaintiffs argued abandonment in the prior action and argue adverse possession in the present action, the plaintiffs’ argument in both actions is based on the same underlying factual grouping, or transaction. Again, the underlying facts in both actions are more than “related”; they are essentially the same. Thus, adverse possession might have been raised in the prior action.
 

 
 *204
 
 Finally, in the prior action, the plaintiffs’ theory of title by deed depended on their successfully addressing the defendants’ claims to an easement and right-of-way in the Seldon Street property. The plaintiffs’ approach to this problem best demonstrates that the plaintiffs’ alleged right to title by deed in the prior action arose out of the same transaction as the rights the plaintiffs assert in the present action. The plaintiffs purported to argue that the defendants had abandoned any easement or right-of-way. The plaintiffs were actually arguing, however, that they had adversely possessed any such easement or right-of-way. The plaintiffs asserted that the defendants’ claim of an easement and right-of-way in Seldon Street made it “necessary [for the plaintiffs] to refer to the elements of adverse possession, including the 15-year time requirement. . . .” The plaintiffs then went on to argue that “[f]or 19 years, the plaintiffs’ actual possession, occupancy, dominion, and control of the entire width of Seldon Street . . . has been open and adverse to the claims of ownership belatedly raised by the defendants only in response to the filing of this action . . . .” Thus, the prior action clearly and, as to the foregoing issue, obviously, arose out of the same series of transactions upon which the plaintiffs base their present adverse possession action. Once again, applying the transactional test, the plaintiffs might have raised adverse possession in the prior action.
 

 The plaintiffs cite
 
 Kaufman
 
 v.
 
 Board of Education,
 
 368 F. Sup. 28 (D. Conn. 1973), as “the starkest basis for denial ... of defendants’ special defense.” The plaintiffs acknowledge that
 
 Kaufman
 
 holds that “if evidence needed to sustain the second action would have sustained the first action . . . then the first claim is res judicata re the second claim . . . .” (Citation omitted; internal quotation marks omitted.) Id., 32. Essentially all of the evidence offered to establish “abandonment” in the prior action would sustain, and was in fact offered
 
 *205
 
 to sustain, the adverse possession claim in the present action. In focusing on “overlapping” evidence in
 
 Kaufman,
 
 the court was merely applying the transactional test; “overlapping” evidence is the result of multiple theories arising out of the same transaction. Under
 
 Kaufman,
 
 the overlapping evidence in the prior and present actions establishes that both of the plaintiffs’ theories, title by deed and adverse possession, constitute a single claim.
 

 According to the plaintiffs, the evidence in the prior and present action does not overlap. “[T]he evidence presented to support plaintiffs’ claim of adverse possession [in the present action],” the plaintiffs argue, “would have been completely without relevance to and could not have sustained plaintiffs’ claim in the prior action. . . . Therefore, the first claim, ownership by title, is not res judicata with regard to the second claim, ownership by adverse possession.”
 

 The court finds this argument somewhat disingenuous. The plaintiffs now claim that evidence that could have supported adverse possession “would have been completely without relevance” in the prior action. If such evidence could go to adverse possession, however, it also went to the city’s abandonment. The plaintiffs now claim that such evidence “could not have sustained the plaintiffs’ claim in the prior action.” The plaintiffs, however, considered such evidence essential to their prior claim at the time it was made. According to the plaintiffs, they had to establish that the city of Norwalk abandoned Seldon Street “[i]n order for judgment to enter for the plaintiffs . . . .’’The plaintiffs take a position directly contrary to their position in the prior action and unsupported by what actually took place in the prior proceeding.
 

 The plaintiffs contend that they could not have raised their adverse possession claim in the prior action. The
 
 *206
 
 plaintiffs rely upon two Connecticut Supreme Court decisions. First, the plaintiffs argue that under
 
 Goldman
 
 v.
 
 Quadrato,
 
 142 Conn. 398, 114 A.2d 687 (1955), they were barred from raising adverse possession in the prior action because the city of Norwalk was the putative owner of Seldon Street. The plaintiffs’ contention is based on Goldman’s holding that “[t]itle to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession.” Id., 402-403.
 

 Second, based on
 
 Clark
 
 v.
 
 Drska,
 
 supra, 1 Conn. App. 481, the plaintiffs argue that under § 47-31, a “two-step process” is necessary to dispose of a claim of adverse possession. The court must first determine who holds record title and, second, must determine whether adverse possession had divested the record owner of title. The “two steps” required under
 
 Clark,
 
 the plaintiffs contend, are two separate actions. The plaintiffs contend that
 
 Goldman
 
 barred them from asserting adverse possession against the city of Norwalk in the prior action. The plaintiffs argue, therefore, that the “plaintiffs’ only option was to claim title by deed and to obtain a judgment in response to the initial
 
 Clark
 
 inquiry: In whom does record title he?” The plaintiffs then go on to argue that since, in the prior action, Seldon Street was determined to be a private way “ownership by the City of Norwalk is no longer an issue [and] the second
 
 Clark
 
 determination [i.e., adverse possession] can now be made” in the present action.
 

 The plaintiffs have misread and misapplied both
 
 Goldman
 
 and
 
 Clark.
 
 First,
 
 Goldman
 
 does not simply hold that a party cannot raise an adverse possession claim against a municipality.
 
 Goldman
 
 clearly establishes that “[a]dverse possession will run against a municipality ... as to land which is not held for a public use.”
 
 Goldman
 
 v.
 
 Quadrato,
 
 supra, 142 Conn. 403. Under
 
 Goldman,
 
 the “controlling factor” is not
 
 *207
 
 whether a municipality holds or purports to hold title to realty, but “the use to which the realty [is] put after its acquisition.” Id., 404. In
 
 Goldman,
 
 the Supreme Court found that, although the city of Waterbury clearly held title to the land in question, the land had not been devoted to a public use. The court held, therefore, “as regards adverse possession, the city held the lot subject to the same legal consequences as would have ensured if an individual had been its owner.” Id., 403.
 

 Thus,
 
 Goldman
 
 did not bar the plaintiffs from asserting adverse possession in the prior action.
 
 Goldman
 
 clearly permits a party to assert that land owned by a municipality was never devoted to public use and is subject, therefore, to adverse possession and has in fact been adversely possessed. This is what the plaintiffs asserted in
 
 Goldman,
 
 what the trial court held, and what the Supreme Court affirmed.
 
 Goldman’s
 
 only effect on the plaintiffs in the prior action would have been to add an element to their adverse possession case; in addition to the traditional elements of adverse possession, the plaintiffs would have had to prove that Seldon Street was never devoted to public use. The plaintiffs actually established this in the prior action based on their evidence that the city of Norwalk had abandoned Seldon Street. Apparently misreading
 
 Goldman,
 
 the plaintiffs, having established one element of their adverse possession case, waited to complete the case in a separate, subsequent action (i.e., the present action). Nothing in
 
 Goldman
 
 endorses the plaintiffs’ chosen course of action.
 

 This brings the court to
 
 Clark
 
 v.
 
 Drska,
 
 supra, 1 Conn. App. 481. The plaintiffs argue that
 
 Clark
 
 requires two separate actions to resolve an adverse possession claim. In fact, nothing in
 
 Clark
 
 supports this position. The court agrees with the plaintiffs that § 47-31 requires “a determination of record title before the issue of adverse possession is reached. . . . [T]he trial court should
 
 *208
 
 first determine in which party record title lies, and then determine whether adverse possession has divested the record owner of title.” (Citation omitted; internal quotation marks omitted.) Id., 488. The reason record title and adverse possession must be determined separately, however, according to
 
 Clark,
 
 is because, under § 47-31, the trial court may only consider “written indicia of title” in determining the record owner. The language of § 47-31, the court observed, is not “broad enough to include facts comprising adverse possession . . . .” (Internal quotation marks omitted.) Id. Thus, the only issue before the court in
 
 Clark
 
 was the scope of the
 
 statute,
 
 i.e., § 47-31; the court did not address the scope or proper subject of the
 
 action.
 
 Nothing in
 
 Clark,
 
 or in any other decision addressing similar issues, even begins to suggest that the separate determinations
 
 Clark
 
 requires cannot be made in the same action. In fact, the court is aware of no case in which these two determinations were not made in the same action. See e.g.,
 
 American Trading Real Estate Properties, Inc.
 
 v.
 
 Trumbull,
 
 215 Conn. 68, 574 A.2d 796 (1990);
 
 Deer Island Assn.
 
 v.
 
 Trolle,
 
 181 Conn. 201,435 A.2d 10 (1980);
 
 Goldman
 
 v.
 
 Quadrato,
 
 supra, 142 Conn. 403. Thus, the plaintiffs’ contention that
 
 Clark
 
 requires both the prior and the present action to resolve their claim of adverse possession is without merit.
 

 For all of the foregoing reasons, the court finds that the rights that the plaintiffs assert against the defendants based on adverse possession in the present action arose out of the same series of transactions as the rights the plaintiffs asserted in the prior action. As noted previously, the factual groupings underlying the prior and present actions are more than merely related in time, space, origin and motivation; they are essentially the same. Further, the factual groupings underlying both actions clearly formed a convenient trial unit. Most of the facts the plaintiffs established to support their
 
 *209
 
 theories of title by deed and abandonment so naturally suggested and supported the theory of adverse possession that it was virtually impossible for the plaintiffs not to try their adverse possession case in the prior action. Thus, adverse possession clearly might have been and, in fact, was raised in the prior action under the transactional test. The court finds, therefore, that the rights the plaintiffs assert in the present action are part of a single claim and that this claim was merged into the judgment in the prior action and was extinguished. Under the doctrine of claim preclusion, the plaintiffs cannot recover upon this claim in the present action.
 

 Judgment may enter for the defendants.
 

 [1]
 

 Review of the audiotape was necessitated by the anomalous result reached by the attorney trial referee, as will be more fully discussed subsequently.
 

 [2]
 

 This conclusion is apparently addressed to the defendants’ claims of a right-of-way in the prior action. The defendants Michael Matteo, Harold and Anna Keyes, Rita Steinberger, individually, Rita Steinberger as administratrix of the estate of Elizabeth Boland and William Boland, all claimed either a statutory right-of-way (pursuant to General Statutes § 13a-55) or a common-law right-of-way in Seldon Street.
 

 [3]
 

 Since this is a claim, not an issue preclusion case, the nonessentiality rule of 1 Restatement (Second), Judgments § 18, comment (h) (1982), does not apply.